## Houseman et al. *versus* Commonwealth *ex rel.* Tener.

1. By virtue of the provisions of article VI. sect. 4 of the Constitution of this commonwealth, appointed municipal officers may be removed at the pleasure of the power by which they shall have been appointed.

2. The incumbent of the office of collector of delinquent taxes of the city of Philadelphia, under the Act of March 24th 1870, Pamph. L. 544, is a public officer, and is liable to be removed from his office at the pleasure of the receiver of taxes.

3. Where an incumbent of said office is duly dismissed during his term and a successor duly appointed, it becomes the duty of the select and common councils to approve the official bond of such successor. In the event of their declining to do so, the duty may be enforced by mandamus.

4. *Semble*, that in construing the constitution of this commonwealth, scarcely any significance can be attached to the wording of the captions or titles of the several articles.

March 31st 1882.　Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 3 of *Philadelphia county :* Of January Term 1882, No. 212.

Mandamus, by the Commonwealth ex rel. Henry B. Tener against John A. Houseman and others, members of the Select and Common Councils of the city of Philadelphia, to compel them to approve relator's official bond as collector of delinquent taxes for the city and county of Philadelphia.

The petition of the relator set forth that on the 7th day of April 1879, Albert C. Roberts, then receiver of taxes of the city of Philadelphia, in pursuance of the provisions of an Act of Assembly, approved March 24th 1870, requiring such receiver to appoint a person to be denominated collector of all outstanding or delinquent taxes in the said city, for the term of three years from the date of his appointment, and until his successor should be duly appointed, had appointed William J. Donohugh to be said collector; that on the 20th of July, 1881, John Hunter, the then receiver of taxes of said city, had removed said Donohugh from his said office, in pursuance, as was averred, of section 4, article 6, of the Constitution of this Commonwealth, providing that "Appointed officers, other than Judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed;" that on the same day said Hunter had appointed the relator to said office in place of said Donohugh; that on the 3d day of November 1881, the relator had proffered and tendered to the select and common council, respectively, his official bond as such collector, with securities, for approval; that the said bond and

securities were in every way ample and sufficient; that an ordinance approving of said bond and sureties had been passed on the 10th day of November 1881, by the common council; that said ordinance, on the 11th of November 1881, had been defeated by a vote of a majority of the members of the select council, without any cause of objection or of disapproval being suggested; and that no cause or reason did exist for such rejection.

The relator prayed for the issue of a writ of alternative mandamus directed to the said select and common councils of said city, commanding them to approve the said official bond and securities so tendered, or to show cause why they should not do so.

On the 10th day of November, 1881, a writ of alternative mandamus was issued to said councils, reciting the facts set forth in said petition, and commanding them in these words: " To approve the said official bond and the securities therein of the said Henry B. Tener, the said relator, so represented as aforesaid to have been proffered and tendered by him to you for approval, or to show cause before us on or before the expiration of ten days herefrom why you should not do the same."

To this writ, common councils made return that they had unanimously approved relator's official bond and securities as tendered. Eleven members of select councils made return that they had voted to approve the bond and securities in question and were willing to obey and abide by the order of the court in the premises.

The remaining sixteen members of select council demurred to the petition on several grounds, viz.: 1. Because the power was taken away from the receiver of taxes by the Act of February 14th 1881, of appointing a collector of delinquent taxes, and therefore the removal of Donohugh and appointment of relator was illegal; 2. Because the collector of delinquent taxes is not one of the officers subject to the removal provided for in the Constitution of Pennsylvania, art. VI. § 4; 3. Because Donohugh's term of office not having expired, any attempt to remove him from office prior to the expiration of said term was ineffectual; 4. Because Donohugh being actually in office holding under claim of right at the time of the presentation of the bond to respondents, it was the duty of councils to refuse to approve said bond until said Donohugh had been removed by quo warranto and until his office had actually become vacant; 5. Because the petition disclosed the fact that councils exercised their discretion to accept or refuse the bond and failed to aver that the exercise of their discretion was controlled by illegal or fraudulent motives.

The court overruled the demurrer and awarded a peremp-

[Houseman *v.* Commonwealth.]

tory writ of mandamus, LUDLOW, P. J., delivering the following opinion:—This case now comes before the court upon a demurrer to an alternative writ of mandamus. It appears very plainly from the pleadings in the cause, that the relator, Henry B. Tener, received an appointment as collector of outstanding or delinquent taxes from the receiver of taxes of the city, in place of William Donohugh, removed from the office. This appointment was made under and by virtue of certain Acts of Assembly relating to the subject, the legal construction of which has been, and doubtless will be the subject of contention. In accordance with the requirements of certain ordinances of the city, the appointed officer, in due form of law, presented his bond, with what appeared to be abundant security, to the councils of the city for approval. One branch, the common council, with unanimity, approved the bond. The select council, however, refused so to do.

The demurrer, of course, admits the truth of every fact stated in the alternative writ, and, as it is alleged that the act of select council was without "cause or reason," we assume it to be a fact that no cause existed, and that the act of refusal was an arbitrary exercise of power.

Can the councils thus act at this stage of the case? That is the question now to be decided. It will be noted that until the bond is approved, the appointed officer is unable to maintain before the courts any right to which he may be entitled. If, as a legal proposition, it is true that upon this investigation the court must decide the question of the legal title to the office, then upon the point now under consideration, unless Mr. Tener receives a legal appointment, the councils would not be bound to approve the bond. A majority of the court are of the opinion that it is our duty to enforce the performance of an act which, by law, the councils were bound to perform. If this act involved the amotion of a member, or his absolute induction into an office, we might pause, but where the duty seems to be simply preliminary, and may involve hereafafter other and far-reaching questions, we have determined that the relator has the legal right thoroughly to equip himself for the office, so that he may be in a position to assert his legal rights.

The duty of councils was simply to approve the bond "as the bonds of city officers are now approved," unless a legal reason existed why they should not do so. To permit a third party arbitrarily to determine whether this or that Act of Assembly was in force, and whether the receiver of taxes had the right to this or any appointment, was to confound things legislative and judicial, to erect a tribunal unknown to the laws, and to determine under the special facts of this case, whether or not a ministerial duty should be performed.

[Houseman *v*. Commonwealth.]

It is possible that a case might arise where an officer unknown to the laws might assume to act, and thrust before councils an unauthorized bond, but that would be an extreme case, and is not the one now before us. For here, an officer known to the laws, to wit, the receiver of taxes, appoints another officer also known to the laws, to wit, a collector of outstanding and delinquent taxes, and the approval of his bond is arbitrarily refused. By way of illustration, can it be possible that wherever the bond of any officer holding a certificate of election, and who is obliged to give security, is presented, its approval may be refused, and upon the ground that the election is contested? Must any court in such a case, and in a multitude of others which might be named, in determining whether a peremptory writ of mandamus shall issue, go into an examination of questions, either of law or of fact, to determine the title to the office? We think that to put this question is to answer it.

We are not, however, without authority to sustain the views heretofore expressed, and thus sanction that which to the majority of the court appears to be sound in principle. In Lamb *v*. Lynd, 8 Wr. 336, our supreme court held directly that "the performance of an official duty of the select and common councils of the city may be compelled by mandamus."

In this cause, the select council undertook to determine the legal rights of certain members of the common council, and the court decided that their duty was prescribed by law, and that they could do nothing but perform it. The principle decided is broad enough and strong enough, we think, to rule this case. To this point in this cause, my brother FINLETTER and myself go for the present; we have very decided views upon the other legal propositions which arise in this case, but at this time we will not express them.

Our brother YERKES does not agree with the majority in the above opinion, but thinks, under another view of the law, which he will state, that the writ ought to issue. While, therefore different reasons may be assigned for the final order about to be made, we are unanimously of the opinion that judgment upon this demurrer must be for the relator in this writ. Let the judgment accordingly be so entered of record, and let the peremptory writ of mandamus be awarded.

YERKES, J., delivered the following concurring opinion:

It seems to me that the question before us is not so much what councils should have done as what we shall force them to do. It must be conceded that before us the relator must show, a clear legal right to the relief sought. I cannot see how he can

[Houseman *v.* Commonwealth.]

have such a right unless he, upon the approval of his securities and the peformance of other prerequisites, would have a perfect title to the office. The respondents in their sworn demurrer aver that all power of appointment is taken away by the Act of February 1881, and that the power of removal conferred by the Constitution does not apply to this office. I cannot agree that such questions are immaterial. I think the doctrine just announced may be injurious. It seems to go to this extent: Had the term of Mr. Donohugh expired last spring, before the Act of February 1881, was declared unconstitutional, and had he been reappointed by the then receiver of taxes, it would have been the duty of councils to have approved his bond, and the courts should have compelled such approval irrespective of validity or invalidity of the Act abolishing the office. In other words, even if the office had been abolished effectually by the Act, councils would have been compelled to do the last act essential to his assuming the office, which he would have held until removed by quo warranto.

No injury is done to the relator, if my view is correct, as he can maintain his right in this proceeding. Believing that we should be satisfied of the validity of the relator's title to the office, except so far as bond and oath are concerned, I dissent from the opinion of the court.

I agree to the judgment because the objections raised to the title of the relator have been settled by authority that we should follow. This court decided, in the cases of Dixey *v.* City, 38 Leg. Int. 157, and Baldwin *v.* City, Id. 157, 469, that those gentlemen were public officers within the 3rd section of article 13 of the Constitution. If this is so, those officers and the collector of delinquent taxes must be officers within the 3d section of article 6.

It was contended that the act of February 1881, was constitutional, except so far as it conferred powers by bare reference to other Acts of Assembly. The court, in Donohugh *v.* Roberts, 38 Leg. Int. 137, however, decided the whole act unconstitutional, because the operative clause was invalid because of it so conferring powers. I do not feel inclined to enter upon a discussion of the decision of any of our co-ordinate courts. In this case it would be manifestly improper, since Mr. Donohugh, who was a party to that case, holds his office now by its authority. Were this court to announce a different view from Common Pleas No. 2, we would have one court deciding an Act unconstitutional, which abolished an office, and as a consequence, keeping the incumbent in, and another court of concurrent jurisdiction holding the same act constitutional, and preventing an otherwise lawfully appointed successor of that same incumbent

from qualifying for the place. It would be a pointed illustration of the law's uncertainty.

Following these decisions, I see no objection to the relator's right, and I therefore concur in the judgment.

A peremptory writ of mandamus was issued accordingly, whereupon the sixteen members of select councils filing the demurrer took this writ, assigning for error the overruling of the demurrer and the awarding of the peremptory writ of mandamus.

After the issuing of the writ of error and the certification of the record to the supreme court, the select and common councils made return to the writ of peremptory mandamus that they had respectively approved relator's official bond and sureties. A certiorari sur diminution of record was then issued and said return certified to the Supreme Court.

*John G. Johnson*, for plaintiffs in error.—Municipial officers are not considered public officers within the meaning of general legislation concerning the latter: Commonwealth *v.* Burrell, 7 Barr 37; Dillon Mun. Corp. §§ 20, 21, 23, 26 and 58. Public officers are those employed in the general state administration: Riddle *v.* Bedford, 7 S. & R. 390; Commonwealth *v.* Sutherland, 3 S. & R. 145; In re Tresurer of Wilmington 3 Harr. (Del.) 294; State *v.* Vallé, 41 Mo. 29; Walker *v.* The City, 21 Ohio St. 51; Britton *v.* Steber, 62 Mo. 374.

It is clearly only to public officers and not to municipal officers that the provisions of article VI. § 4 of the Constitution relative to and removal from office apply. No light can be obtained from the provisions of the old constitution on this point, but by observing the order of the articles in the new constitution some information may be gleaned. The articles preceding the one in question all relate to the election or appointment of state or county officers only. Such may be fairly considered to be the only officers refined to in the article in question.

The article entitled " oath of office " does not require municipal officers to take such oath. The preceding article is the one in question entitled " impeachment and removal from office." The word " office " may be presumed to mean the same thing in both cases, and therefore in the latter case not to include municipal officers; clearly the framers of the constitution never contemplated that municipal officers should be subject to impeachment.in the manner provided in article VI., neither are they liable to removal in the manner provided in that article.

The removal of Donohugh was therefore clearly illegal, and

[Houseman *v.* Commonwealth.]

if so, the appointment of the relator to the office was equally invalid. Councils were right in refusing to approve the official bond of an officer illegally appointed. No relator is entitled to relief by a writ of mandamus who fails to establish his title thereto. Commonwealth ex rel. Leslie *v.* County Commissioners, 5 Rawle 77; Commonwealth *v.* Dennison, 24 How. 66; High on Extraordinary Remedies §§ 9, 10, 14, 33, 64.

It cannot be truly argued that a reversal of the judgment of the court below, ordering an approval of the relator's bonds, will have no practical effect, because it will be competent for councils, in case of such reversal, to repeal the ordinance passed by them, solely because of the compulsion of the writ of peremptory mandamus. If their first action in defeating the ordinance was right, they ought not have been coerced to do what, in their discretion, was improper.

*Furman Sheppard* (with whom were *Alfred Moore* and *Joseph L. Caven*), for defendant in error.—The writ of error was no obstacle to the issuing of the peremptory writ of mandamus, even if the latter had issued after the writ of error was taken. The former, could only operate " as a supersedeas to an execution for damages or costs:" People ex rel. Griffen *v.* Steele, Edmonds (N. Y.) 564; Pinckney *v.* Henegan 2 Strob. 256; Dean & Chapter of Dublin *v.* Dowgatt, 1 P. Wms. 351.

Councils having made return that they have complied with the peremptory writ, nothing remains to be done. The case is at an end and the object of the relator attained.

Councils are bound to approve relator's bond, if it is sufficient in amount and the sureties are proper and responsible parties. They cannot interpose an objection to relator's title.

The collection of state taxes by the collector of delinquent taxes makes him in every sense a public officer. Commonwealth *v.* Evans, 24 P. F. S. 124.

The term " all officers," employed in section 4 of article VI. relating to the right of removal from office, is broad enough to cover the present case. There is nothing to restrict the generality of the expression to " impeachable officers." There is no reason or ground of public policy why municipal officers should not be subject to removal in like manner as state officers. Wherever the constitution means to draw a distinction between state officers and non state officers, it speaks of them with discrimination. The word " officers " has been construed to include non state officers. Commonwealth *v.* Shaver, 3 W. & S. 338; Commonwealth *v.* Harris, 1 Leg. Gaz. Rep. 455.

Reference to the debates of the convention will serve to

[Houseman v. Commonwealth.]

strengthen the view above taken. Debates of Const. Conv. vol. 5, 375; vol. 7, 561; vol. 8, 122, 124.

Mr. Justice GREEN delivered the opinion of the court, October 2d 1882.

The practical controversy between the parties to this proceeding turns upon the validity of the relator's appointment. That question depends upon the construction to be given to the fourth section of the sixth article of the constitution of 1874. So much of the section as pertains to this contention is in these words : "Appointed officers other than judges of the courts of record and the superintendent of public instruction may be removed at the pleasure of the power by which they shall have been appointed."

Donohugh, the former incumbent of the office of collector of delinquent taxes in the city of Philadelphia, was removed from his office prior to the expiration of the term of his appointment, and the relator, Tener, was appointed in his place. Both the removal and appointment were the acts of John Hunter, who, at the time, was the duly elected and acting receiver of taxes for the city. The only objection to the validity of Tener's appointment is the alleged invalidity of Donohugh's removal. If the latter was lawfully removed, the former was lawfully appointed. The present proceeding is not a trial of the title to the office. It is not a quo warranto, but a mandamus to compel the city councils to approve the official bond tendered by the relator. A peremptory writ having been awarded by the learned court below, the bond was approved by an ordinance of the councils. The present writ of error is taken to the decree awarding the peremptory writ. It is contended with much force on the part of the relator, that as the bond has been approved it is an end of proceedings and the writ of error is fruitless. As the view that we take of the case renders the decision of this question unnecessary we pass it by. It is argued by the very able counsel for the plaintiffs in error that the removal of Donohugh was an invalid exercise of power, for the reason that the power of removal does not extend to municipal officers. It is conceded that this result can only be reached by restricting the plain words of the constitution. In their literal sense it cannot be doubted that the words descriptive of the officials subject to removal, make no distinction between state, county and municipal officers, and do include them all. The first clause of the fourth section provides that, "all officers shall hold their offices on the condition that they behave themselves well while in office and shall be removed on conviction of misbehavior in office or of any infamous crime." The remainder of the section directs

that appointed officers may be removed at the pleasure of the power appointing them, and elected officers by the governor on the address of two thirds of the senate. The whole language of the section is very general. We see nothing in it which authorizes a distinction between state, county and municipal officers. The only distinction made in the section is between officers appointive and elective. But that distinction is common to state and county officers, as well as to those who are municipal. And there are petty officers in each class, so that no force can be given to the suggestion that municipal officers were not intended to be included, because many of them are of a petty and insignificant character. There are petty state officers and petty county officers, and it may well be that it was not intended that any of these should be either subject to impeachment, or to removal on address of two-thirds of the senate. But that consideration will not prove that an important municipal officer exercising grave public functions shall not be subject to removal, at the pleasure of the power which appointed him.

There was provision for removal in the old constitution as well as in the new. Section 9 of the sixth article provided that all officers for a term of years should hold their offices during good behavior and should be removed on conviction of misbehavior in office or of any infamous crime. That section, with the words " for a term of years " stricken from it, constitutes the first clause of the fourth section of the sixth article of the new constitution. It is manifest then that the words " all officers " in the old constitution were not intended to import only such as were subject to impeachment, and the argument by inference from such a supposed restriction is not applicable. But the old constitution while it provided removal as a penalty failed to declare who should exercise the power, and limited it to the cases of conviction of misbehavior in office or of an infamous crime. The fourth section of the sixth article of the new constitution, enlarges the power of removal and speaks with more certainty both as to the authority which shall be clothed with it, and the manner of its exercise. Under the new constitution there are three kinds of removal, to wit, on conviction of misbehavior or crime, at the pleasure of the appointing power, and for reasonable cause on the address of two-thirds of the senate. All officers are subject to the first kind, appointed officers to the second, and elected officers to the third. It seems to us very clear that the word " officers " here is used in the same sense throughout the section so far as their classification into state, county and municipal, is concerned. We cannot conceive that we have any right to say that the expression " appointed officers " shall be held to exclude such as are

municipal, and include only such as are state or county, when it is not at all disputed that the expression "all officers" in the first clause includes them all. · The distinction between appointed and elected officers, is one that relates merely to the source of their authority. That is, those that are appointed, not some of them but all of them, may be removed at the mere pleasure of the power that appointed them, and those that are elected, on the address of two-thirds of the senate, and by the governor. In the latter case there must be some reasonable cause of removal, in the former, there need be none but the mere will of the appointing power. It seems to us that we would be making, rather than construing, the constitution if we should say that appointed municipal officers shall not be removable at the pleasure of the power which appointed them, when the plain unambiguous words of the instrument positively declare that all appointed officers shall be subject to such removal. If we could thus declare, it is difficult to perceive any good reason why we might not with the same propriety hold that appointed county officers should be exempted from this method of removal. In truth there is no distinction appearing in the section either by words or inference, in either the territorial or functional character of the offices held by the persons who are subjected to its operation. For us to make such a distinction would be a work of creation, not of interpretation.

It is argued that a reading of other clauses of the constitution leads to the inference that municipal officers were not intended to be embraced in the section we are considering. If that section were of dubious meaning, this argument, if sustained, would be of force. As, however, it seems to us the meaning is not doubtful, the argument becomes far less persuasive. But an examination of other parts of the instrument does not in our judgment sustain the position. Scarcely any significance can be attached to the wording of the captions or titles of the several articles, either in the old or new constitution. At most they do not profess to indicate more than the general character of the article to which they are prefixed. That they are intended as critical and precise definitions of the subject matter of the articles, or as exercising restraining limitations upon the clear expressions therein contained, can not be pretended. Thus the twelfth article of the new constitution is entitled "Public Officers." It is composed of three sections. The first simply declares that all officers whose selection is not provided for in the constitution shall be elected or appointed as may be directed by law. The second declares the incompatibility of federal and state offices, and the third imposes the penalty of ineligibility upon duellists and challengers. It is not possible, by any kind of construction, to

regard this article as a designation of the officers who are to be
considered as public. In the old constitution the same caption
is given to the third section of the sixth article, and yet the entire
section provides only for the mode of selection, and tenure of
office of prothonotaries, clerks, recorders and registers. It is plain
that from so untenable a basis no inference can be drawn that
*municipal* officers are not intended to be included in the ex-
pressions "officers," "all officers," "appointed officers,"
"officers elected by the people" and "civil officers." To im-
pose such a limitation upon the comprehensive import of these
phrases, some express declaration to that effect, or some inev-
itable inference, would be requisite. Especially is this the case
in the construction of instruments, which declare the organic
law of a state. Such instruments deal with larger topics and are
couched in broader phrase than legislative acts or private
muniments. They do not undertake to define with minute
precision in the manner of the latter, and hence their just in-
terpretation is not always to be reached by the application of
similar methods.

It is argued for the plaintiffs in error that there is an absence
of provision for municipal officers in the constitution, which
indicates that they were not intended to be included within the
meaning of the words and phrases above mentioned. The ar-
gument is not without force, as it must be confessed there is
much meagreness of reference in the instrument to municipal
affairs and officers. But a close inspection developes, as we
think, sufficient of such reference to take away the force of the
argument. In the 27th section of the third article it is pro-
vided that, "no state office shall be continued or created for
the inspection or measuring of any merchandise, manufacture
or commodity, but any county or municipality may appoint
such officers when required by law." Here the term "office"
is used as equally and similarly within the function of the state,
the county, or the municipality. The third section of the
eighth article provides for the holding of all elections for city,
ward, borough, and township officers. The fifteenth section of
the same article declares the ineligibility as an election officer
of any person who has held within two months, "any office, ap-
pointment or employment in or under the government of the
United States or of this state, or of any city or county, or of
any municipal board, commission or trust in any city." In the
last clause of the same section it is provided that no elective
officer shall "be eligible to any civil office to be filled at an
election at which he shall serve, save only to such subordinate
municipal or local offices, below the grade of city or county
offices, as shall be designated by general law." In the ninth
and tenth sections of the ninth article all municipalities are

grouped with counties, townships and school districts in pro-
visions which relate to the creation and discharge of indebted-
ness and its assumption by the commonwealth.  County officers
are the subject of provisions in the first five and the last, of
the sections of the fourteenth article, and in the sixth section
" all county, township and borough officers," are classed to-
gether in a single provision for their strict accountability for
fees and "for all public or municipal moneys which may be
paid to them."

The fifteenth article relates to cities, and city charters.  The
24th section of the schedule provides for the continuance in of-
fice of all aldermen who, are in office at the adoption of the con-
stitution, in cities containing over fifty thousand inhabitants ex-
cept Philadelphia.  The 25th section provides for the election
of magistrates in Philadelphia in lieu of aldermen and fixes
their term of office as also the expiration of the terms of alder-
men in office.  The 29th section directs that " all state, county,
city, ward, borough and township officers, in office at the time
of the adoption of this constitution, whose compensation is not
provided for by salaries alone, shall continue to receive the
compensation allowed them by law until the expiration of their
respective terms of office."  Nothing can be clearer than that
the word " officers " is here used in precisely the same sense,
whether it relates to state, county or municipality.

In addition to the foregoing there are other clauses of the
constitution in which the words, " office " and " officers," are
used with a generality of expression which plainly includes
those of the state, county and municipality.  Thus the eleventh
section of the third article prohibits the passage of any bill
giving any extra compensation to " any public officer, servant,
employee, agent or contractor," in certain circumstances.  The
13th section of the same article invalidates any law extending the
term of " any public officer," or increasing or diminishing his
salary during his term.  The second section of the twelfth arti-
cle provides that no member of congress or other federal office-
holder, " shall at the same time hold or exercise any office in this
state, to which a salary, fees or perquisites shall be attached."
Certainly the term " any office " here used, includes municipal
as well as state and county offices.  In the last clause of the
same section the general assembly is authorized to " declare
what offices are incompatible."  This power they exercised
by Act of May 15th 1874, P. L. 186, and an examination of it
shows that in the designation of incompatible offices, state,
county and municipal offices are mingled without discrimina-
tion.  The third section of the third article directs that any
person fighting a duel or sending a challenge, " shall be de-
prived of the right of holding any office of honor or profit in

[Houseman *v.* Commonwealth.]

this state." We think it will scarcely be claimed that munici-
pal officers may fight duels with immunity from this section,
on the ground that they are not to be considered as persons
" holding any office of honor or profit in this state." The 26th
section of the schedule declares that " all persons in office in
this commonwealth, at the time of the adoption of this consti-
tution," shall hold their offices until the expiration of their terms.
Certainly this language includes municipal as well as state and
county officers.

From all this we are clearly of opinion that no restricted
meaning can be attached to the words, " all officers," " appoint-
ed officers " and " all officers elected by the people," in the
fourth section of the sixth article, upon the theory that such
restriction is either suggested or required by the reading of
other clauses of the constitution. On the contrary, we think
that such reading is in hostility with such a theory, and in con-
firmation of the generality of meaning which those expressions
in themselves plainly import.

If, departing from this line of reasoning, we inquire whether
the office of receiver of delinquent taxes in Philadelphia is a
public office, and brings its incumbent within the category of
" public officers," and as such amenable to removal, we think
the way is equally clear. He is a receiver of taxes. The
moneys which come to his hands are public moneys. A consid-
erable part of them are collected for, and are payable to the
Commonwealth under statutes enacted specially for that purpose.
No element of mere private trust pertains to his functions. The
sums he receives may be of much magnitude. He is the of-
ficer of a great municipal government with an immense popu-
lation and vast material interests. It would seem that such
considerations sufficiently indicate the public character of his of-
ficial position. But the question is not without authority.

In the case of the Commonwealth *v.* Evans, 24 P. F. S. 124,
the present Chief Justice, on page 139 said, " We are of opin-
ion that the defendant below was a public officer within the
purview of the first section of the Act of July 12th 1842,
Pamph. L. 339, which excepts from the provisions of that Act,
abolishing imprisonment for debt, proceedings for the recovery
of moneys collected by any public officer. It may sometimes
indeed, be a difficult matter to distinguish between a public of-
ficer, and a person employed by the government to perform
some special service by contract . . . But we are of opinion
that all persons who, by authority of law, are intrusted with
the receipt of public moneys, through whose hands money due
to the public or belonging to it, passes on its way to the pub-
lic treasury, must be so considered, by whatever name or
title they may be designated in the law authorizing their ap-

[City of Philadelphia v. Wright.]

pointment, and whether the service be special or general, transient or permanent . . . No one can doubt that collectors of public taxes are within the letter of the exception of the Act of 1842." While it is true that Evans was employed by the state, the decision of the case was not based upon that consideration. In point of fact he was not an "officer" in the ordinary sense of that term, but rather a special agent employed for a single purpose. In the case of Commonwealth v. Shaver, 3 W. & S. 338, we held that the ninth section of the sixth article of the constitution of 1838, which provides for the removal of "all officers for a term of years" on conviction of misbehavior or crime, embraced a sheriff although he is a county and not a state officer. On page 340 we said, "It is very clear that sheriffs as well as other officers, holding their respective offices for a term of years only, are embraced within this provision of the constitution."

We are clearly of opinion that the removal of Donohugh was a valid exercise of power, and as the appointment of his successor devolved upon the receiver, who exerted his authority by appointing the relator, it was the duty of the councils to approve his bond, and there was no error in the decree to that effect.

Judgment affirmed.