# Richie, Appellant, *v.* Philadelphia.

*Public officers—Increase of salary—Constitutional officers—Legislative officers—Real estate assessors.*

1. Real estate assessors in counties having a population of 1,000,000 or over are public officers within the meaning of sec. 13, art. III, of the constitution of Pennsylvania, which provides that: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Such officers are not entitled to the benefit of the Act of May 31, 1907, P. L. 329, which increases the salaries of real estate assessors in counties having a population of 1,000,000 or over from $2,000 to $3,000.

2. An office is a public one within the meaning of the constitution if the holder of it exercises grave public functions and is clothed at the time being with some of the powers of sovereignty.

3. The term "public officers" is not restricted merely to officers created by constitutional provisions, but applies to officers who exercise important public duties, have delegated to them some of the functions of government, and whose offices are for a fixed term and whose powers, duties and emoluments become vested in a successor, when the offices become vacant.

4. A consideration of the duties imposed upon real estate assessors leaves no doubt that the relation which they sustain to the maintenance of government is of such consequence that they should be considered public officers. The functions which they perform are of prime importance. Their duties are designated by statute; they serve for a fixed period; act under oath, the duties they perform are semi-judicial in character and their services are indispensable in the fiscal system as established by the state.

Argued Jan. 15, 1909. Appeal, No. 329, Jan. T., 1908, by plaintiff, from judgment of Superior Court, Oct. T., 1907, No. 235, affirming judgment of C. P. No. 4, Phila. Co., June T., 1907, No. 3,823, for defendant on case stated in suit of James E. Richie v. Philadelphia. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from Superior Court.

The facts appear from the report of Richie v. Philadelphia, 37 Pa. Superior Ct. 190, and the opinion of the Supreme Court.

*Error assigned* was the judgment of the Superior Court affirming the judgment of the lower court on case stated.

*John C. Bell* and *John G. Johnson*, with them *Chester N. Farr, Jr.*, and *Charles L. Brown*, for appellant.

*Ernest Lowengrund*, assistant city solicitor, with him *J. Howard Gendell*, city solicitor, for appellee.

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

By the Act of May 31, 1907, P. L. 329, the salaries of real

estate assessors in counties having a population of 1,000,000 or over were fixed at $3,000 per annum. At the time of the approval of this act the appellant was one of the real estate assessors of the county of Philadelphia, to which the act applied, having been appointed on December 31, 1903, to serve for a period of five years from the date of his appointment. His salary, as fixed by the act of April 12, 1873, was $2,000 per annum, and the court of common pleas, sustained by the Superior Court (Richie v. Philadelphia, 37 Pa. Superior Ct. 190), denied him the increase claimed under the act of May 31, 1907, on the ground that its provisions did not extend to him in view of sec. 13, art. III, of the constitution, which prohibits the increase of the salary or emoluments of any public officer after his election or appointment.

Two reasons are assigned why the judgment of the Superior Court should not be sustained. The first is that the clause in the constitution prohibiting the increase of the salary of a public officer after his election or appointment applies only to public officers who hold constitutional offices. A real estate assessor is not such an officer, for his office is not one of those named in the constitution, and a clear distinction is recognized by our cases between a constitutional office enjoying exemption from legislative interference and control and one wholly legislative, created and abolished at the legislative will. This distinction, however, is not the real question before us. What we are again called upon to decide is whether the thirteenth section of the third article of the constitution is broad enough, and was so intended by the framers of the constitution, to extend to all public officers (except those saved by the constitution itself) upon whom grave and important duties are imposed for a fixed term, and who, for the proper performance of the same, have, during the term of their election or appointment, delegated to them some of the functions of government. The third article of the constitution is, throughout its thirty-three sections, a restraint upon the powers of the general assembly, and if its thirteenth section was intended to apply only to the comparatively few offices created by the constitution, with which

alone state, county and municipal government could not be administered, such intention would certainly have found expression somewhere in the article upon legislation. That the narrow construction for which the learned counsel for the appellant contend is not to be placed upon the thirteenth section we have distinctly ruled in two cases, and substantially so in others. In Brooke v. Commonwealth, 86 Pa. 163, the suggestion upon which the writ of quo warranto issued averred that on July 8, 1875, Downing, a member of select council from one of the wards of Philadelphia, had resigned; that by the laws in existence at the time of his election his term of office would have expired on the first Monday of January, 1877; that by virtue of the act of March 10, 1875, passed after his election, his term of office had been extended to the first Monday of April, 1877. The answer of respondent was that Downing's term had not been affected by the act of March 10, 1875, because of the constitutional provision that no law shall extend the term of any public officer after his election. The demurrer to the answer having been overruled by the court below and a writ of error taken to this court, we said in sustaining the demurrer: "Under the law in force at his election, Downing's term expired in January, 1877. The constitution of 1874 forbade his extension by legislative enactment." Subsequently, in Houseman v. The Commonwealth, 100 Pa. 222, in answer to the contention that municipal officers were not intended to be embraced in the term "officer" as used in sec. 4, art. VI, of the constitution, which provides that all officers shall hold their offices during good behavior, and appointed officers, other than judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the power by which they are appointed, we said, through GREEN, J., that the words "office," "officers" and "any public officer" mentioned in sec. 13, art. III, of the constitution, "are used with a generality of expression which plainly includes those of the state, county and municipality;" and it is to be regarded as settled that an office is a public one within the meaning of the constitution if the holder of it exercises grave

public functions and is clothed at the time being with some of the powers of sovereignty.

The second reason urged why the appellant should have judgment is that, even if the constitutional prohibition is not limited to constitutional officers, he is not a public officer. In every case in which the question arises whether the holder of an office is to be regarded as a public officer within the meaning of the constitution, that question must be determined by a consideration of the nature of the service to be performed by the incumbent and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one. In the performance of his statutory duties this appellant fixed, in the first instance, the values of properties as the basis upon which they were to be assessed for the purpose of raising revenues for the maintenance of the city and county governments and the support of the public schools. In passing judgment upon these values it may be said that he exercised semi-judicial functions, the proper exercise of which was of the gravest importance to the entire community. By the proper test he was held by both the common pleas and Superior Court to have been a public officer in commission at the time of the passage of the act of 1907, and, in vindication of the judgment of the Superior Court nothing is to be added to the following from its opinion: "The second contention is that even if the constitutional prohibition is applicable to legislative as well as constitutional officers, nevertheless, a real estate assessor cannot be properly considered a public officer. It is no doubt true that there are many persons engaged in the public service in subordinate positions exercising functions of such an inferior character that they could not be properly considered public officers within the meaning of the constitution; this much is indicated in Com. v. Black, 201 Pa. 433, and Houseman v. Com., 100 Pa. 222, in the latter of which the court expressed the opinion that policemen, firemen, watchmen and superintendents of public

property under the orders of the municipal department were subordinate ministerial agents or employees, at the most, petty officers not intended to be embraced in the constitutional provision, and, therefore, subject to appointment and removal according to legislative regulation. Where, however, the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer. The powers and duties attached to the position manifest its character. A consideration of the duties imposed upon real estate assessors leaves no doubt in our minds that the relation which they sustain to the maintenance of government is of such consequence that they should be considered public officers. The functions which they perform are of prime importance. Their duties are designated by statute; they serve for a fixed period; act under oath, the duties they perform are semi-judicial in character and their services are indispensable in the fiscal system as established by the state. It was decided in Williamson's Est., 153 Pa. 508, that assessment is primarily the work of the assessors, and the powers of the board of revision extend only to the work of revision. If the assessor neglect to put a valuation on any property he has listed the board may supply the omission, and where property that should have been assessed has been overlooked by the assessor the board may place it on the list and fix its value. Their only authority to make a valuation exists where the assessors have omitted to make it. The assessors alone are invested with power to list the property and fix its value in the first instance. A proper discharge of their duties is a matter of great consequence to the taxable inhabitants and involves judgment, intelligence, integrity and a wide knowledge of values. That the office was considered important is shown by the limited number of such officials in the city of Philadelphia and the considerable compensation accorded to them. The duties imposed place them in a position of such dignity and responsibility that they may well be considered

public officers and as such subject to the operation of sec. 13 of art. III of the constitution."

No one of the cases cited in support of appellant's contentions conflicts with the foregoing views. It may be proper to refer to two of them upon which great reliance seems to be placed. In Kilgore v. Magee, 85 Pa. 401, the question whether the appellant was a public officer within the meaning of sec. 13, art. III, of the constitution was not discussed in the opinion of the court overruling the five specific objections to the constitutionality of the act under consideration. The decrees were on demurrers to the bills, from the face of which it evidently did not appear to the court that Kilgore was a public officer. At all events, it was said of him that he was filling the place of a mere public servant of the municipality. In the very next volume of the reports, Brooke v. Commonwealth, supra, a member of council—a municipal officer, but one clothed with legislative functions—was held to be a public officer within the terms of the constitution. The question in Com. v. Weir, 165 Pa. 284, was not as to the extension of the term of the chief burgess, but as to its curtailment. The constitutional restriction is not upon the abridgment or abrogation of a non-constitutional public office, but upon the extension of the same. Weir's office was abridged, and, in abridging. it, the legislature violated no constitutional prohibition. "If the provision were 'no law shall abridge the term of any public officer,' it might well be contended that what cannot be curtailed cannot be abrogated, but the instrument contains no such language. The salary 'may not be increased or diminished,' but what is declared of the term is simply that it 'shall not be extended.' To say that this means that the office shall not be abolished, or its duration shortened, would be to wrest the words of the organic law to a purpose which it does not disclose:" HARE, J., in Donohugh v. Roberts, 11 W. N. C. 186. For the reason thus given by this very learned judge the constitutional prohibition was not violated in the Weir case.

The assignment of error is overruled and the judgment for the appellee is affirmed.