FRANK BLACKBURN,

*Plaintiff and Appellant,*

vs.

BOARD OF COUNTY COMMISSIONERS OF PARK
COUNTY, WYOMING,

*Defendant and Respondent.*

(No. 2479; January 23, 1951; 226 Pac. (2d) 784.)

For plaintiff and appellant the cause was submitted on the brief of Littleton and Steadman of Cody, Wyoming.

For defendant and respondent the cause was submitted on the brief of Milward L. Simpson of Cody, Wyoming and J. Edward Amschel of counsel of Jackson, Wyoming.

496

## OPINION

RINER, Justice.

This is a direct appeal from a judgment of the District Court of Park County sustaining a demurrer of the defendant Board of County Commissioners of Park County, Wyoming to an amended petition filed by the plaintiff Frank Blackburn against it, reciting an election by the plaintiff to plead no further, adjudging that

plaintiff take nothing by his pleading and awarding costs to the defendant. Hereinafter for the sake of brevity the parties will be designated as they appeared in the District Court, viz. as plaintiff and defendant, or the plaintiff by his surname, and the Board of County Commissioners of Park County, as the "Board."

Plaintiff's amended petition alleges substantially as follows: That on November 5, 1946 he was duly elected Sheriff of Park County, Wyoming; that thereafter he qualified, and since January 6, 1947 he has been such officer; that the Constitution of the State of Wyoming by Section 3 of Article XIV provides:

"Salaries of county officers—The legislature shall by law designate county offices and shall, from time to time, fix the salaries of county officers, which shall in all cases be in proportion to the value of the services rendered and the duties performed";

that said section was duly adopted by vote of the people at a general election held on November 7, 1944 and proclaimed in effect on December 6, 1944.

That section 27-302 W. C. S. 1945 as amended and re-enacted by Chapter 108, Laws of Wyoming, 1949, approved and in effect after February 25, 1949, provides:

"27-302. Annual salaries — additional compensation from public funds forbidden—Expenses allowed—The various county officers in their respective counties hereinafter designated, shall receive the following annual salaries payable in equal monthly installments:

| Officers | First Class Counties | Second Class Counties | Third Class Counties |
|---|---|---|---|
| County Assessor | $3600 | $3300 | $3000 |
| County & Prosecuting Atty. | 3600 | 2700 | 2300 |
| County Clerk | 3600 | 3300 | 3000 |
| County Sheriff | 3600 | 3300 | 3000 |
| Clerk of the District Court | 3600 | 3300 | ------- |
| County Supt. of Schools | 3600 | 3300 | 3000 |
| County Treasurer | 3600 | 3300 | 3000 |

"Provided, however, that in Counties having an assessed valuation, of Thirty Million Dollars ($30,000,000) or over the salaries of the above named officers shall be $3900.00 each.

"The salaries hereinabove provided shall compensate such county officers for all of the duties prescribed by law to be performed by them, and no such officer shall receive from state and county funds any additional or separate salary or compensation other than as above specified; provided, that this restriction shall not apply to traveling and other expenses nor to compensation allowed for office or house rent when expressly provided by law."

That the assessed valuation of Park County, Wyoming for the year 1946 totaled $21,131,326 and for the year 1949 said valuation totaled $46,581,416; that at all times since the year 1946 Park County, Wyoming has been a first class county.

That for the months of March, April, May, June, July, August, September, October, November and December 1949, ten months in all, plaintiff has submitted to the Board herein his bill for salary as County Sheriff of Park County, Wyoming on the basis of $3900.00 per year as provided by law; that said Board has allowed plaintiff's bill in part and rejected it in part; that for each one of these ten months mentioned above, this bill was allowed on the basis of an annual salary of $3000.00 per year rather than on a basis of $3900.00 per year as provided by law.

That there is now owing to Blackburn, plaintiff as aforesaid, as the Sheriff of said Park County, Wyoming by the defendant Board 10/12 of $900, being the difference between the several amounts claimed and those allowed, or a total amount now due and owing from the defendant to the plaintiff of $750.00.

Judgment was prayed against the Board for the sum last mentioned plus plaintiff's costs herein incurred.

To this amended petition the defendant interposed a general demurrer stating that plaintiff's pleading did "not state facts sufficient to constitute a cause of action in favor of the plaintiff and against this defendant."

The legal questions thereby raised were argued to the court with the result already hereinabove recited.

Recalling that according to plaintiff's amended petition he was duly elected Sheriff of Park County on November 5, 1946 that he qualified as such officer thereafter and since January 6, 1947 he has been serving Park County as its official Sheriff, the real question to be determined is whether the legislature by the enactment of Chapter 108, Laws of Wyoming, 1949 quoted at length above in plaintiff's amended pleading, entitles him to receive during the remainder of his term of office the increase in salary prescribed in that Chapter. When he was elected and qualified as such Sheriff, the salary he thereafter received was $3000.00 yearly as provided by Section 27-302 W. C. S. 1945.

This question arises because Article III, Section 32 of the Constitution of Wyoming provides:

"Except as otherwise provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his

election or appointment; but this shall not be construed to forbid the legislature from fixing salaries or emoluments of those officers first elected or appointed under this constitution, if such salaries or emoluments are not fixed by its provisions."

It will be noted that this prohibition appears in that part of the state constitution dealing with the legislative department of the Commonwealth. There should be considered also with the section just quoted, the language of Section 1 of Article XIV reading:

"All state, city, county, town and school officers, (ex cepting justices of the peace and constables in precincts having less than fifteen hundred population, and excepting Court Commissioners, boards of arbitration and notaries public) shall be paid fixed and definite salaries. The *legislature shall, from time to time, fix the amount of such salaries as are not already fixed by this constitution, which shall in all cases be in proportion to the value of the services rendered and the duty performed.*"

Since the case of Board of Commissioners of Converse County vs. Burns, 3 Wyo. 691, 29 P. 894, 30 P. 415 was decided this court has repeatedly held that the rule announced therein was sound and should be followed:

In Nickerson et al. vs. Winslow, 22 Wyo. 259, 138 P. 184 140 P. 834, after quoting Section 32 of Article III supra this court said:

"The meaning of this section is clear. There is no ambiguity about it. The words are pointed and direct. They mean just what they say and construe themselves. When it says that the salary of a public officer shall not be increased or diminished after his election it means that the salary or compensation for the term to which he was elected shall not be changed after, but becomes fixed as of the date of the election, although such officer is not inducted into office until the first Monday of January, immediately following such election. (Sec. 1136, Comp. Stat. 1910). This view is borne out by the decision in Burns v. Commissioners, 3 Wyo. 691, 700, 29 Pac. 894, 898, where this court in speaking of this sec-

tion says: 'In the interval between the election or appointment of the public officer and his qualification and induction into office there can be no change in the compensation as well as during the official term.' This judicial interpretation has been followed by this court in State ex rel. Henderson v. Burdick, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; Davis v. Commissioners, 4 Wyo. 477, 482, 35 Pac. 467; Guthrie v. Commissioners, 7 Wyo. 95, 50 Pac. 229; Commissioners v. Mulholland, (Decided Nov. 10, 1913) 136 Pac. 112. We think the meaning of the section has been settled by the foregoing cases, and for that reason it need not be further discussed."

The Nickerson case supra ruled that although the term of the County and Prosecuting Attorney of Fremont County, Wyoming, elected at the preceding general election in November 1912, did not commence until the first Monday of the following January, the amount of his salary became fixed and determined according to the statute in force at the time of his election and could not by a law going into effect thereafter, viz., December 31, 1912, but before his term began, be increased or diminished for that term without violating the provisions of Section 32 of Article III of the Wyoming Constitution supra. The statute in question classified counties for the purpose of fixing the compensation of county officers, but it could not constitutionally be applied so as to increase or diminish such salary for the term of the County Attorney fixed as aforesaid.

The rule of the Burns case above cited was also followed by this Court in Guthrie vs. Board of Commissioners of Converse County, 7 Wyo. 95, 50 Pac. 229 where it was decided that no change in the salary of a County Clerk could be made during his term of office though there was a change in the assessed valuation of property in Converse County where he officiated as such officer. After pointing out that "this precise question was before this court and determined" in the Burns

case supra, Mr. Justice Potter speaking for the court, after a re-examination of the matter said:

"Upon independent consideration, however, I agree with the conclusions announced in that case with regard to the construction of the constitutional provisions. The interpretation which the court gave to the constitution appears to me to preserve its spirit and policy, and renders all its various provisions germane to the subject of salaries of county officials harmonious. I can not coincide with the proposition that an increase in the salary of an official during his term on account of a change in assessed valuation of the county, and its consequent transformation into another class is not the result of the law fixing the amount of the salaries which such officers shall receive. The only basis for the salary is the legislative enactment; and I fail to observe any practical distinction between a law which in express terms proposes to supply an officer with such increase, and one which furnishes a standard by which the increase is made possible. In either case the law has increased the salary, when, if the standard is followed, an increase results."

But it is insisted that Section 3 of Article XIV of our fundamental charter as it now stands (as adopted in 1944) has so changed that instrument that another result must be reached in the case at bar than was announced in the earlier decisions mentioned and quoted from above. That section at the time those decisions were rendered read: "The salaries of county officers shall be fixed by law within the following limits, to-wit: In counties having an assessed valuation not exceeding two million ($2,000,000) dollars, the Sheriff shall be paid not more than $1500.00 per year." The section then proceeds to list the several county officers and fixes their maximum compensation; it does the same for officers in counties having assessed valuations of more than two million ($2,000,000) dollars and not exceeding five million ($5,000,000) dollars and also in counties having more than five million ($5,000,000) dollars assessed

valuation; finally the section declares that "the county surveyor in each county shall receive not to exceed eight ($8.00) dollars per day for each day actually engaged in the performance of the duties of his office."

In the year 1944 the said section, as last above described, was amended as we have already indicated by the vote of the people had on November 7 of that year, so as to read simply:

"The legislature shall by law designate county offices and shall, from time to time, fix the salaries of county officers, which shall in all cases be in proportion to the value of the services rendered and the duties performed."

In passing we may note that in the Burns case supra concerning Section 1, Article XIV of the Wyoming Constitution after discussing the "salutary inhibition of the" Wyoming Constitution contained in Section 32 of Article III supra the court said:

"It is contended that this salutary inhibition of the constitution does not apply to county officers, as it is 'otherwise provided' in the constitution that the salaries of county officers can be increased or diminished after their election and appointment and during their term of service. There certainly is no express provision to that effect, and, if there be any provision implying it, we have failed to find it.

"In support of this argument it is earnestly contended that the closing clause of Section 1, art. 14, is in point, as the legislature is from time to time required to fix the salaries of such officers whose salaries have not already been fixed by the constitution, which shall 'in all cases be in proportion to the value of the services rendered and the duty performed.'"

Thus the court declared that neither by express provision nor by implication does Section 1 of Article XIV say that salaries of county officials could be increased or diminished after their election or appointment and

during their term of service. It should be especially
noted also that the wording of the last sentence of Sec-
tion 1, Article XIV of the Constitution and that of the
entire section 3 of Article XIV as it now stands are
practically identical except in the section last mentioned
appear the words "shall by law designate county offices"
and in Section 1, Article XIV aforesaid appear the words
qualifying the term "salaries as are not already fixed
by this constitution." This slight variance in language
does not carry any idea or notion that in either section
anything was intended regarding a *"change"* in the
salaries of county officials during their term or after
their election or appointment. Indeed there is nothing
in the language of Section 3, Article XIV when it was
presented to the people of this state in 1944 for their
approval or rejection which could in a fair interpreta-
tion of that language convey to the ordinary mind of
the electorate that anything was intended which would
interfere with the prohibition as to the alteration of
salaries embodied in the phraseology of Section 32 of
Article III supra. Discussing further Section 1 of
Article XIV of the Wyoming Constitution in the Burns
case the court said:

"There is a further provision in Section 1, art. 14, that
has an important bearing on this case, and that is that
the salaries of all officers shall be 'fixed and definite.'
These words have a precise and certain meaning. They
mean a certain, precise, exact and clear salary; not one
that shall be sliding up or down with the fluctuations of
the assessment of the county. Construing them with
the constitutional provision fixing salaries of county
officers, they mean a fixed and definite salary per year;
construing them with the constitutional inhibition
against an increase or decrease during the term of an
officer and after his election or appointment, they mean
a fixed and definite salary for the term of office. Thus
construing these different constitutional provisions to-
gether, there is no doubt that they interpret themselves,
and that they mean that the salaries of county officials

cannot be increased or diminished during the official term, including the interval between the election or appointment and the induction of the official into office."

If we had nothing before us to aid in the instant matter except these earlier decisions we should, in the clear language of Mr. Justice Potter in the Guthrie case supra "hesitate to overturn them." Previously he had said:

"But it seems to be that a previous well considered decision of the Supreme Court upon a doubtful question of constitutional construction should not be lightly disturbed or departed from, and that unless it is quite clear that manifest error has crept into such a decision it should be allowed to stand. Any other policy would operate to continually unsettle such matters, and judicial decisions concerning them would not be credited with much stability, or be entitled to that respect which they ought to command."

But we are aided additionally and substantially by the following authorities: 67 C. J. S. 342, Section 95 states: "Constitutional or statutory provisions prohibiting a change in the compensation of public officers after their election or appointment or during their terms of office are given effect in accordance with their intent, and may not be circumvented by indirect changes."

The same text, page 349 further says:

"Under a constitutional provision prohibiting an increase in the salary or emoluments of any public officer after his election or appointment or during his term of office, a law increasing the compensation of officers can apply only to officers elected or appointed, or whose term commences, after its passage."

Section 349, page 141 of 43 Am. Jur. declares that:

"The general power of the legislature or other public body to alter the compensation of public officers is not infrequently limited by constitutional restrictions against changing the compensation of public officers or certain named officers while they are in office. Various

phrases are employed to designate the period during which the change in compensation is prohibited, as during the officer's 'term of office;' 'during his existing term;' 'after his election or during his term of office;' 'after his election or appointment;' 'after his election or appointment or during his term of office;' 'during the term for which he shall have been elected or appointed;' or other such phrase.

"These constitutional restrictions, whether in terms directed against an increase of compensation, a decrease, or both, create an absolute disability of the legislature to alter the compensation in the manner and during the period specified, although additional compensation may be allowed for the performance of new duties not germane to the office."

So. 57 C. J. 1106, Section 1137 remarks that:

"A salary fixed for a sheriff continues throughout his entire term. Under a constitutional provision that no law shall increase the salary or emoluments of any public officer after his election or appointment, a law increasing the compensation of sheriffs or constables can apply only to officers elected or appointed after its passage;"

In Commonwealth vs. Moore, 266 Pa. 100, 109 Atl. 611 the Supreme Court of Pennsylvania adopted the views expressed in the opinion of the Supreme Court of that State as to who may be regarded as a "public officer" as follows:

"The appellants are registration commissioners of the city of Pittsburgh, appointed by the Governor July 16, 1916, for a term of four years under the provisions of the act of 1913 (P.L. 977). The act fixed the salary of such officers at $2,000 per year. By an amendment enacted in 1917 (P.L. 1108), the salary was increased to $3,000 per annum. The question for consideration is whether the appellants are public officers within the meaning of section 13 of article 3 of the Constitution, which prohibits the increase of salaries of public officers during their term of office. The learned judge of the court below, being of the opinion that they were such

public officers, overruled the demurrer of the relators to the return of the respondent, and entered judgment in favor of the latter.

"It is contended by the appellants that the provision of the Constitution referred to does not apply to legislative offices created since the adoption of the Constitution of 1874, and that the Legislature is given full power to increase the compensation of such officers by the amendment of 1901 to the Constitution. It was decided in Richie v. Phila., 225 Pa. 511, 74 Atl. 430, 26 L. R. A. (N. S.) 289, that the term 'public officers' is not restricted merely to officers who exercise important public duties, and the ruling in that case is a sufficient answer to the contention of the plaintiff that a constitutional provision only has reference to officers then in existence. The term, 'public officers,' is descriptive of many officials whose positions were created by Legislature subsequently to the adoption of the Constitution of 1874. Where the duties of the office are to be exercised for the benefit of the public for a stipulated compensation to be paid by the public, where the term is definite and the tenure certain, and where the powers, duties, and emoluments become vested in a successor when the office becomes vacant, it can confidently be affirmed that the occupant of the place is a public officer within the meaning of the Constitution, Richie v. Phila., supra; Com. ex rel. v. Moffitt, 238 Pa. 255, 86 Atl. 75, Ann. Cas. 1914C, 211."

Concerning the same subject the Supreme Court of Ohio in State ex rel. Milburn et al. vs. Pethtel, 153 Ohio State 1, 90 N. E. 2d 686 has recently said:

"Section 20, Article II of the Constitution of Ohio, provides as follows:

" 'The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officers during his existing term, unless the office be abolished.'

"If the relators are officers they are prohibited by the limitations of the Constitution from receiving increased compensation during their term of office.

"It is stated in 42 American Jurisprudence, page 880, that '* * * Ordinarily and generally, a public office is defined to be the right, authority, and duty created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. * * *'

"On page 881 of the same volume '* * * It (a public office) must have some permanency and continuity and possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public. The powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; and the duties must be performed independently and without control of a superior officer, other than the law, unless they are those of an inferior or subordinate officer, created or authorized by the Legislature and by it placed under the general control of a superior officer or body. * * *' "

See also State v. Williams, 346 Mo. 1003, 144 S. W. 2d 98, 103. The last three decisions are here briefly reviewed as throwing light upon the language of Section 32, Article III supra where the term "public officer" is used. See also Wilkins vs. Trimbur — Common Pleas of Ohio — 86 N. E. 2d 503.

In Lancaster vs. Commissioners, 115 Colo. 261, 171 Pac. 2d 987 is to be found an interesting case upon facts and law in many respects resembling those at bar. July 2, 1945 the Colorado legislature put in force an act reclassifying counties, thereby providing increased salaries for county officers ( Laws of Colorado 1945, C. 125). Plaintiffs were officers in Jefferson County of that state affected by this law. All of them except the plaintiff Lancaster had been elected and had commenced to serve their several terms of office prior to the passage of the act. Lancaster had been subsequently appointed to fill a vacancy due to the resignation of the County Treasurer. The action was brought in order to deter-

mine the plaintiff's right to increased salaries under the new law. The District Court held that that law could not affect the existing terms of any of the plaintiffs so far as altering their salaries was concerned.

Article IV of the Colorado Constitution referring to the executive department of that state provided that the salaries of named executive officers should "not be increased or diminished during their official terms." Article XIV dealing with counties (cf. Section 3, Article XIV, Wyoming Constitution as amended in 1944) contained no such a limitation but provided that the officers there named, including all the offices held by plaintiffs in this action except that of county judge, should receive such compensation as might be provided by law. Article VI of Section 22 had a similar provision as to the county judge's salary. Unless forbidden by another constitutional provision the aforesaid act, increasing salaries, should affect them all as of July 2, 1945. Plaintiffs argued there was no such other prohibitive constitutional mandate. As negativing this contention the defendant pointed to Section 30 of Article V of the Colorado Constitution which as amended in 1928 read:

"The salaries of the governor, the governor's secretary, and the judges of the supreme and district courts of the State shall be fixed by legislative enactment; provided, that the salaries of said officers heretofore fixed by the Constitution shall continue in force until otherwise provided for by legislative enactment."

"No law shall extend the term of any public officer, or increase or decrease his salary, after his election or appointment, as fixed by legislative enactment."

But the plaintiffs in reply took the position that the two paragraphs of Section 30 should be construed together; that the second controls only the salaries of the officials named in the first paragraph. The trial court agreed with the defendant and entered judgment deny-

ing any increased salaries to any of the plaintiffs. Referring to the question posed by plaintiffs in reply as above, the court said this:

"In determining this question, we note first that the plain language of the prohibition refers to 'any public officer'; second, that Article V, to which section 30 belongs, contains the constitutional provisions relative to the legislative department and under that article should properly be included restrictions on the power of the legislature as to terms or salaries of public officers generally, and third, that the second paragraph of the section is in substance the original provision of the Constitution. As originally adopted, it read as follows: 'Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment; provided, this shall not be construed to forbid the general assembly to fix the salary and emoluments of those first elected or appointed under this Constitution.' This prohibition of the Constitution against increase or decrease of salary of an officer after his election was intended to apply and did apply in the original Constitution to 'any public officer.' It was amended in 1882 to read as follows: 'Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment; provided that on and after the first day of March, A. D. 1881, the salaries of the following designated public officers, including those thereof who may then be incumbents of such offices, shall be as herein provided, viz., The governor shall receive an annual salary of $5000.00 and the further sum of $1500.00 for the payment of a private secretary; the judges of the Supreme Court shall each receive an annual salary of $5000.00; the judges of the District Courts shall each receive an annual salary of $4000.00.' It is apparent that the naming of certain public officers in that amendment was not intended to limit the constitutional inhibition as to increase or dimunition of salary to the officers therein named, and we held in Henderson v. County of Boulder, 51 Colo. 364, 117 Pac. 997, that it applied to the office of county judge; rather it was intended to specify in

the Constitution the salaries of the certain officers there named. Having these prior provisions in mind, it becomes apparent that the further amendment of 1928 was not intended to change the general inhibition as formerly established, but merely to make possible a change by the legislature in the salaries of the officers therein named, which had theretofore been fixed by the Constitution. Since the 1928 amendment, Article V, section 30, has twice been considered by us as applying to county officers. Young v. Board of County Commissioners 102, Colo. 342, 79 P. (2d) 654, and Blakeley v. People, ex rel., 104 Colo. 206, 89 P. (2d) 1015. The prohibition under the 1928 amendment of Article V, Section 30, is against increase of an incumbent's salary, 'as fixed by legislative enactment.' Prior to the amendment, the salaries of all plaintiffs herein had been so fixed. The salaries of the officers named in the amendment to section 30 had not been previously fixed by legislative enactment, but by specific provision of the Constitution. Accordingly, under that amendment the legislature was authorized to fix the salaries of the officers therein named, to be immediately effective, but no others. As to all of plaintiffs except Lancaster, we are bound by the constitutional provision against increase of the salary of any public officer after his election."

The judgment of the District Court in the foregoing case was affirmed as to all plaintiffs except Lancaster. As to him the judgment was reversed with instructions that it should be determined that the defendant was required to pay him the increased compensation, he having taken office after the effective date of the act increasing salaries as mentioned above.

The most recent decision which has come under our notice is that of Ramsey vs. Gage County, 153 Neb. 24, 43 N. W. (2d) 593 (July 8, 1950). In that case the plaintiff, a county supervisor already in office at the time the statute mentioned below was enacted, filed a claim for a salary increase based upon Section 33-128 R. S. supp. 1949 which became law August 27, of that year. This statute provided that such officers should have addi-

tional compensation and by its terms applied to Gage County. The defendant County denied that plaintiff was entitled to this increase, asserting that Article III, Section 19 of the Constitution of 1920 forbade any such increase inasmuch as it read as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered nor to any contractor after the contract has been entered into, nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof be increased or diminished during his term of office."

The trial court held that this section of the Nebraska Constitution barred the plaintiff from receiving the enlarged compensation. Affirming this judgment, the appellate tribunal in the course of the opinion filed in the case remarked:

"The courts which have specifically considered the question have reached the conclusion that constitutional provisions prohibiting change in the compensation of public officers are not confined in their application to office directly created under the Constitution, but are applicable to all public offices, whether of legislative or of constitutional origin. See, Calvert County Com'rs v. Monnett, 164 Md. 101, 164 A. 155 86 A. L. R. 1258; Crawford v. Hunt, 41 Ariz. 229, 17 P. 2d 802.

"It has been held in many cases decided by the Supreme Court of Pennsylvania that such an inhibition applies to officers holding offices created by the Legislature, as well as those created by the Constitution, and that no distinction should be made in applying the rule as between the two classes. Lancaster County v. Fulton, 128 Pa. 48, 18 A. 384, 5 L. R. A. 436; Richie v. Philadelphia, 225 Pa. 511, 74 A. 430, 26 L. R. A. N.S., 289; Tucker's Appeal, 271 Pa. 462, 114 A. 626 Com. ex rel. Wolfe v. Moffitt, 238 Pa. 255, 86 A. 75, Ann. Cas. 1914C, 211.

"We are impressed with the soundness of the authorities aforecited. The Constitutional provision in question

is plain and emphatic. The words used are apt and direct, constitute a material and significant change in the section, and construe themselves. It positively forbids increasing or diminishing the compensation of all officers, state and county, whose salaries are fixed by the Legislature. It was designed to protect the individual officer against legislative oppression and, further, to curb the activities of public officers in lobbying to induce the Legislature to increase salaries. By the amendment the people simply said that the Legislature shall not increase or diminish the compensation of any public officer during his term of office, and that this inhibition should include any, and therefore all, public officers whose compensation is fixed by the Legislature."

Nothing appears to be said in the case last reviewed concerning the earlier decision of State ex rel Johnson vs. Marsh, 149 Neb. 1, 29 N. W. 2d 799 which seems to have announced a contrary rule and one difficult to reconcile with the later pronouncement in the Ramsey case. The Johnson case is but briefly cited in the Ramsey case. It was rendered by the Supreme Court of Nebraska when that court was composed entirely of District Judges sitting in lieu the regularly elected justices of the Supreme Court. However, the two Nebraska decisions aforesaid are examined rather fully in the Nebraska Law Review, page 112 for November, 1950 (Vol. 30, No. 1) and the Johnson ruling is disapproved. See Note 5, Page 112 of the Law Review last cited and its concluding two paragraphs as follows:

"The primary reason that so many states have provisions against the practice (of altering a public officer's compensation by legislative enactment during his present existing term) is to relieve the pressure brought to bear upon lawmakers to grant increases. It is equally true that no public official can feel secure in the administration of his duties where his salary is subject to legislative whim, for the power to control a man's salary is very likely to become the power to control his will."

"Clearly the instance case re-establishes earlier Nebraska holdings, coincides with the expressed intent of the makers of the 1920 constitution, and is promotive of better government. Furthermore, it squares with holdings in other jurisdictions having similar constitutional provisions. The bars, which were improperly let down in 1947 for the benefit of a few, have been correctly raised again in the instant case, (the Ramsey decision)."

In conclusion it may be observed that the office of the Attorney General of Wyoming was requested to examine the question raised by the instant litigation, and on April 16, 1949 advised the State Examiner of Wyoming that "it is our opinion that any county officer who had been elected or appointed to office prior to February 25, 1949—the effective date of the act—is not entitled to receive the increased compensation provided for by the act."

All things considered and in view of the authorities reviewed hereinabove and the clear intent of the constitutional provisions, we feel obliged to adhere to the earlier decisions of this court on the point involved and affirm the judgment of the District Court of Park County as correctly interpreting the law in the matter in hand.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.