**Charlesretta MEADE, Esq., Chair; Robert N.C. Nix III, Esq., Secretary; Honorable Russell M. Nigro; Honorable Alan K. Silberstein; Howard M. Goldsmith, Esq. and Anthony M. Lewis Jr.; as Individuals in their own right**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2012.

Decided March 20, 2013.

Richard G. Feder, Chief Deputy City Solicitor, Philadelphia, for appellant.

Howard K. Goldstein and William P. Murphy, Philadelphia, for appellees.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge and COVEY, Judge.

OPINION BY Judge McGINLEY.

The City of Philadelphia (City) appeals the order of the Court of Common Pleas of Philadelphia County (common pleas court) which granted the motion for summary judgment of the Honorable Russell M. Nigro and the Honorable Howard M. Goldsmith (Nigro and Goldsmith). The common pleas court certified the order as a final order pursuant to Pa.R.A.P. 341(c).

## I. Background.

Charlesretta Meade, Esq., Chair; Robert N.C. Nix III, Esq., Secretary; Honorable Russell M. Nigro; Honorable Alan K. Silberstein; Howard M. Goldsmith, Esq.; and Anthony M. Lewis, Jr., the members of the Board of Revision of Taxes (BRT) of the City of Philadelphia, voluntarily agreed to relinquish their real property assessment responsibilities. Pursuant to a Memorandum of Understanding dated October 5, 2009, and executed by the Mayor's Office of the City, the Finance Director's Office of the City, and the BRT, responsibility for assessments would be vested in the Finance Director or his designee. The BRT would be responsible for hearing and resolving appeals from those assessments. The Memorandum of Understanding was effective October 5, 2009, and was to cover a six month term with mutual renewals. The renewals could total six months. The

Memorandum of Understanding was not renewed.

On December 17, 2009, City Council voted to remove from the BRT the BRT's assessment responsibilities and its appeals responsibilities. Subject to voter referendum, City Council created two new City agencies to assume these responsibilities—an Office of Property Assessment and a Board of Property Assessment Appeals. City Council also voted to abolish the BRT. City Council provided that the newly created appeal board would receive the following compensation: $50,000 for the chairman, $45,000 for the secretary, and $150/meeting for the remaining members up to a maximum of $40,000 per year.

On March 8, 2010, the members of the BRT sought to enjoin the referendum. The members of the BRT asked our Pennsylvania Supreme Court to accept King's Bench jurisdiction over the suit and preclude the City from transferring the appellate function of the BRT. On April 22, 2010, the City Council voted to reduce the salaries of the BRT members immediately. Pursuant to this salary ordinance, the chairman of the BRT's salary was reduced from $75,000 to $50,000 per year, the salary of the secretary was reduced from $72,000 to $45,000 per year and the salaries of the other members were reduced from $70,000 per year to a payment of $150 per meeting up to a maximum of $40,000 per year.

Our Pennsylvania Supreme Court dismissed the suit without prejudice. *Board of Revision of Taxes v. City of Philadelphia*, 605 Pa. 667, 993 A.2d 873 (2010). The City argued that the lawsuit was premature because the BRT would not be abolished unless and until the voters approved the referendum. In the referendum voters voted by a margin of more than two to one to transfer both the appellate and assessment functions from the BRT.

The members of the BRT then filed suit in this Court and contended that the City lacked authority to eliminate the BRT's appellate function and also complained about the reduction in salary. This Court transferred the case to the common pleas court. The members of the BRT again pursued King's Bench jurisdiction in the Supreme Court. The Supreme Court declined to exercise jurisdiction over the salary dispute but accepted jurisdiction over the appellate function claim. The Supreme Court held that the City had authority to remove the assessment function from the BRT but lacked authority to eliminate the appellate function. *Board of Revision of Taxes v. City of Philadelphia*, 607 Pa. 104, 4 A.3d 610 (2010) (*BRT II*). The Supreme Court allowed the transfer of the assessment function to proceed but enjoined the transfer of the appellate function and the creation of the new appellate board. The case was then returned to the common pleas court for the members of the BRT to pursue their salary claim.

In the salary claim, the members of the BRT contended that the reduction of salary violated Article III, Section 27 of the Pennsylvania Constitution which provides that "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." The members of the BRT claimed that they were public officers within the meaning of Article III, Section 27 and that the City had no authority to reduce their salaries until the completion of their current terms of office.

In Answer and New Matter, the City raised several defenses and asserted counterclaims against several members of the BRT. With respect to all members, the City asserted that they were not public officers within the meaning of Article III,

Section 27 as the Pennsylvania Constitution did not intend that term to apply to all government officials but that the term "public officers" means only those officials who perform important functions and who serve fixed terms of office and cannot be terminated for other than cause.

On February 14, 2011, the members of the BRT preliminarily objected to the City's Answer with New Matter and Counterclaim. On April 21, 2011, the City filed a response in opposition to the preliminary objections. Both sides filed briefs. The common pleas court heard oral argument.

## II. Common Pleas Court Decision.

On June 17, 2011, the common pleas court entered judgment in favor of the members of the BRT on their salary claims. On June 22, 2011, the City moved for reconsideration. On July 22, 2011, the common pleas court entered an order staying the interlocutory order and scheduled a mandatory settlement conference. On July 29, 2011, the common pleas court stayed the June 17, 2011, order and expedited the filing of summary judgment motions so that a final order could be entered on the constitutional issue and make it ripe for appeal.

Nigro and Goldsmith moved for summary judgment. The City also moved for summary judgment as did Charlesretta Meade, Esq., Robert N.C. Nix, III, Esq., the Honorable Alan K. Silberstein, and Anthony M. Lewis, Jr., the remaining members of the BRT. The common pleas court granted Nigro and Goldsmith's summary judgment motion. By order dated December 2, 2011, the common pleas court denied the summary judgment motion of the remaining members of the BRT. In a separate order also dated December 2, 2011, the common pleas court denied the summary judgment motion of the City.[1]

The common pleas court concluded that Nigro and Goldsmith were "public officers" with respect to Article III, Section 27 based on *BRT II* and *Richie v. Philadelphia,* 225 Pa. 511, 74 A. 430 (1909). The common pleas court further determined that because the members of the BRT were public officers, their salaries could not be reduced in the middle of their terms:

Having now found that the BRT Members are 'public officers,' the issue of whether a municipal ordinance which reduces such officers' salaries and emoluments during his or her term of office falls within the prohibition of Art. III § 27 needs resolution. To do this, one needs only look at a case recently decided by the Supreme Court of Pennsylvania. In *Buckwalter v. Borough of Phoenixville,* 603 Pa. 534, 988 [985] A.2d 728 (2009), the Court found that all municipalities in Pennsylvania derive their power from the Pennsylvania Legislature and if the Legislature could not alter midterm, the compensation of a public officer, then municipalities were also governed by the same constitutional limitation of power imposed by Art. III § 27 of the Pennsylvania Constitution.

Therefore, considering this and the record as a whole, the Salary Ordinance insofar as it attempts to reduce the salary and emoluments of the Members of the BRT during his or her term of office, is found to be in violation of Art. III § 27 and unconstitutional and invalid.

As part of is Answer in this matter, the City claims that the SO [Salary Ordinance] was not an unconstitutional reduction of the BRT Members' salary and emoluments because the Ordinance was based upon a reduction in the duties of these Members. This Answer is pretex-

---

1. The denial of the two motions is not before this Court on appeal.

tual because the SO [Salary Ordinance] reducing the compensation became effective upon the passage and signing of the Ordinance on April 22, 2010. The RO [Reorganization Ordinance] which was the Ordinance that putatively reduced the Members' duties could not have become effective prior to its effective date of October 1, 2010, which is more than six (6) months after the compensation was reduced. The attempt to tie the compensation reduction to a reduction in duties must also fail as a result of being defective on its face.

Therefore, Summary Judgment was properly granted because Plaintiffs [Nigro and Goldsmith] are 'public officers' within the meaning of Article III § 27 of the Pennsylvania Constitution, and thus the SO [Salary Ordinance] reducing the salary and emoluments of the BRT Members mid-term was unconstitutional.

Common Pleas Court Opinion, January 17, 2012, (Opinion) at 8–9.

### III. City's Arguments.

The City contends the constitutional prohibition against a mid-term diminution in salary does not apply to government officials who serve at the pleasure of their appointing authority[2] and also does not apply to government officials who have experienced a lawful and substantial mid-term diminution in their statutory responsibilities.[3]

2. The appointing authority here is a majority of the judges of the Court of Common Pleas of Philadelphia County.

3. This Court's review of a common pleas court's grant of summary judgment is limited to determining whether the common pleas court made an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.

### A. Are Nigro and Goldsmith Public Officers?

■ Initially, the City contends that Nigro and Goldsmith are not public officers within the meaning of Article III, Section 27 of the Pennsylvania Constitution and are not protected from mid-term salary decreases because they served at the pleasure of their appointing authorities.

The City theorizes that the framers of the Pennsylvania Constitution understood that where direct political interference in job performance was flatly prohibited, political forces might interfere with the conduct of a public office indirectly by using the threat of cutting the public official's compensation to keep the official "in line." As a result, the framers enacted Article III, Section 27. The City further theorizes that where the General Assembly has seen fit to offer a public official no job protection—i.e., where the official serves at the pleasure of his or her appointing authority, and is subject to removal without a showing of cause—why protect the official from indirect interference in the performance of his duties where threat of removal may be imposed directly?

The City asserts that the test applied to determine whether an official is a public officer, subject to Article III, Section 27 of the Pennsylvania Constitution, is whether the official is chosen for a definite term and whose duties are for the benefit of the public for a stipulated consideration. *In re Bowman*, 111 Pa.Super. 383, 170 A. 717 (1934).

Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment should only be granted in a clear case and the moving party bears the burden of demonstrating that no material issue of fact remains. The record must be reviewed in the light most favorable to the non-moving party. *Id.*

The City asserts that Nigro and Goldsmith fail to meet this test. Critically, the City recognizes that members of the BRT are appointed for six year terms under Section 2 of the Act of June 27, 1939, P.L. 1199 (the Act), 72 P.S. § 5341.2, which provides that a member of the BRT shall be appointed for the "full term of six years" by a majority of the judges of the Court of Common Pleas of Philadelphia County. However, the City argues that because the members of the BRT may be removed at the pleasure of the appointing authority, they are not appointed for a definite term. There is nothing in the record to indicate that the judges of the Court of Common Pleas have expressed any desire to remove Nigro, Goldsmith, or any of the other members of the BRT.

In opposition, Nigro and Goldsmith suggest that this Court must look to another constitutional provision, Article VI, Section 7 of the Pennsylvania Constitution [4] which provides:

> All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. *Appointed officers, other than judges of the courts of record ... may be removed at the pleasure of the power by which they shall have been appointed.* All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate. (Emphasis added).

In *Houseman v. Commonwealth ex rel. Tener*, 100 Pa. 222 (1882), Henry B. Tener (Tener) was named to replace William J. Donohugh (Donohugh) as collector of delinquent taxes in the City of Philadelphia. Donohugh had been appointed on April 7, 1879, to a three year term. On July 20, 1881, the new receiver of taxes, John Hunter, removed Donohugh from office pursuant to the then Article VI, Section 4 of the Pennsylvania Constitution. Tener was appointed to fill the position. On November 3, 1881, Tener tendered to the select and common council, respectively, his official bond as collector for approval. The common council approved the bond on November 10, 1881. On November 11, 1881, the select council rejected the bond by a majority vote. Tener sought a writ of mandamus to the select and common councils of the City of Philadelphia to compel them to approve the official bond and securities tendered or to show cause why they should not do so. The writ was issued. The common council made return of the writ and stated that it had unanimously approved the bond.

A majority of the select council demurred and asserted that the authority to appoint the collector of delinquent taxes by the receiver of taxes ceased with the passage of the Act of February 14, 1881, so the removal of Donohugh and the appointment of Tener were both illegal, that the collector of taxes was not one of the officers subject to removal under then Article VI, Section 4, even though he was subject to removal by the appointing authority, that Donohugh could not be removed from office until the expiration of his term, that Donohugh was properly in office and no bond could be approved until Donohugh vacated the office, and that the select council exercised its discretion without illegal or fraudulent motives. The Court of

---

4. Article VI, Section 7 was previously Article VI, Section 4 until it was renumbered in 1966.

Common Pleas of Philadelphia County overruled the demurrer and awarded a peremptory writ of mandamus.

On appeal, the Pennsylvania Supreme Court affirmed and determined that the collector of delinquent taxes was a public officer pursuant to then Article VI, Section 4 because he was an "important municipal officer exercising grave public functions." *Houseman*, 100 Pa. at 230. The determination that Donohugh could be removed from office at the pleasure of the receiver of taxes did not figure in the analysis of whether he was an officer under then Article VI, Section 4.

The City asserts that the possibility of removal at the pleasure of an appointing authority precludes a specific statutory term of service from being fixed and definite. This assertion conflicts with Article VI, Section 7 which states that all appointed officers are subject to removal by the appointing authority. The City maintains that because the members of the BRT possibly will not serve a definite term they are not public officers.

However, Section 2 of the Act, 72 P.S. § 5341.2, provides:

> After the effective date of this act, all appointments of members of the board in counties of the first class shall be made by a majority of the judges of the courts of common pleas of the county, and said judges shall appoint a member

of the board for the *full term of six years* whenever, after the effective date of this act, any vacancy shall occur, whether by reason of the termination of an incumbent's term, his death, resignation or removal. (Emphasis added).

The Act clearly authorizes the appointment of members of the BRT for a definite term and the City has conceded as much. Although the appointing authority, in this case, the Court of Common Pleas of Philadelphia County, has authority to remove members of the BRT, this Court is unable to ignore the plain language of a statute which specifies that BRT members shall be appointed for a "full term of six years." Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a), provides, "Every word, sentence, or provision of a statute is intended for some purpose and much be given effect." Further, the Pennsylvania Supreme Court has held that the question of whether the General Assembly exempted an appointed officer from the removal at pleasure provisions of Article VI, Section 4 of the Pennsylvania Constitution is one of intent to be gleaned from the statute that created or regulated the office. *Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117, 125 A.2d 354 (1956). Clearly, the language in the Act supports a finding that the General Assembly intended that members of the BRT not be subject to removal on a whim.[5]

---

5. The City cites to *Russo v. Dembe*, (Pa. Cmwlth. No. 340 M.D.2009, filed August 25, 2009) for support of its contention that because members of the BRT may be removed at the pleasure of the appointing authority, the majority of the Court of Common Pleas of Philadelphia County, the members of the BRT are not public officers. In *Russo*, Joseph Russo was removed from his position as a member of the BRT by the Court of Common Pleas of Philadelphia County because he refused to cooperate with an investigation conducted by the Office of Inspector General. Russo asserted that he was discharged without a hear-

ing in violation of his due process rights. The President Judge of the Court of Common Pleas of Philadelphia County preliminarily objected on the basis that Russo failed to state a claim for which relief could be granted because Russo had received all process to which he was due. This Court sustained the preliminary objection on the basis that under 42 Pa.C.S. § 2142 members of boards of view could be removed without cause by the court of common pleas of the county in which the board was located and the BRT served in effect as a Board of View. This Court does not find *Russo* applicable. The issue here is not

The common pleas court cited two cases in support of its determination that Nigro and Goldsmith are subject to Article III, Section 27 of the Pennsylvania Constitution. In *BRT II*, the Supreme Court determined that the City lacked the authority to change the BRT's appellate function as that power rested with the General Assembly and that the special "quasi-judicial" duties of the BRT's appellate function allowed for some role for the Court of Common Pleas of Philadelphia County to make the appointments to the BRT.

The common pleas court determined that the public importance of the appellate function of the BRT, as recognized by the Pennsylvania Supreme Court, supported the interpretation that the BRT members exercise grave public functions such that they must be classified as public officers for purposes of Article III, Section 27 of the Constitution.

The common pleas court also cited *Richie*. In *Richie*, James E. Richie (Richie) served as a real estate tax assessor for the County of Philadelphia. When Richie took office on December 31, 1903, his annual salary was fixed at $2,000. The General Assembly by the Act of May 31, 1907, P.L. 329 (1907 Act) fixed salaries for real estate assessors in counties having a population of 1,000,000, or over, at $3,000 per annum. Richie sought the higher salary. The Court of Common Pleas of Philadelphia County denied Richie's request on the ground that the provisions of the 1907 Act did not extend to him because of Article III, Section 13 of the Pennsylvania Consti-

tution.[6] The Pennsylvania Superior Court affirmed. *Richie*, 225 Pa. at 512–513, 74 A. at 430.

On appeal to the Supreme Court, Richie raised two issues. He first argued that the constitutional prohibition against changing his salary during his term of office did not apply to him because it only applied if an individual held an office named in the Pennsylvania Constitution. The Supreme Court held that "an office is a public one, within the meaning of the Constitution, if the holder of its [sic] exercises grave public functions and is clothed at the time being with some of the powers of sovereignty." *Richie*, 225 Pa. at 514–515, 74 A. at 431.

The second issue raised by Richie was that even if the constitutional prohibition extended beyond constitutionally named officers, he was not a public officer. The Supreme Court disagreed:

> A consideration of the duties imposed upon real estate assessors leaves no doubt in our minds that the relation which they sustain to the maintenance of government is of such consequence that they should be considered public officers. The functions which they perform are of prime importance. Their duties are designated by statute. They serve for a fixed period, act under oath, the duties they perform are semijudicial in character, and their services are indispensable in the fiscal system as established by the state. . . . The assessors alone are invested with power to list the property and fix its value in the first

whether a member of the BRT has a due process property right in his appointment such that he is entitled to a hearing when removed by the Court of Common Pleas of Philadelphia County. The issue here is whether members of the BRT are "public officers" pursuant to Article III, Section 27 of the Pennsylvania Constitution. Further, even if *Russo* were on point, it would not have

precedential value pursuant to this Court's Internal Operating Procedure § 414 because a single judge opinion "shall be cited only for its persuasive value, not as a binding precedent."

6. Article III, Section 13 was subsequently renumbered as Article III, Section 27.

instance. A proper discharge of their duties is a matter of great consequence to the taxable inhabitants and involves judgment, intelligence, integrity, and a wide knowledge of values. That the office was considered important is shown by the limited number of such officials in the city of Philadelphia and the considerable compensation accorded to them. The duties imposed place them in a position of such dignity and responsibility that they may well be considered public officers, and as such subject to the operation of section 13 of article 3 of the Constitution.

*Richie*, 225 Pa. at 516–517, 74 A. at 432.[7]

The common pleas court, here, analyzed the appellate function of the members of the BRT based on the analysis employed by the Pennsylvania Supreme Court in *Richie* and concluded that the members were public officers within the meaning of Article III, Section 27 of the Pennsylvania Constitution. This Court agrees. The members of the BRT, even when stripped of their authority to perform assessments, meet the criteria set forth in *Richie*.[8] Their duties are set by statute and the members serve for a set term. Further, the Pennsylvania Supreme Court held in *BRT II* that the BRT's duties were quasi-judicial in character. Additionally, the BRT's services are an essential part of the real estate taxation system.

**B. Even if Nigro and Goldsmith are Public Officers, does the Pennsylvania Constitution Prohibit a Midterm Reduction in Salaries?**

■ The City next contends that because Nigro and Goldsmith's job responsibilities have been substantially diminished, the Pennsylvania Constitution does not prohibit a mid-term diminishment in salary. The BRT previously was responsible for the annual assessment of all real property in the City as well as review of the appeals from those assessments. The BRT currently has nothing to do with making the assessments or in supervising those who do. The City illustrates its point by way of the great reduction in BRT employees and in the BRT's budget.

The common pleas court discounted this argument because the salary ordinance was adopted in April 2010, and the BRT did not officially relinquish its assessment duties until October 1, 2010.

Whether it makes no sense to prohibit a mid-term reduction in salary when duties are reduced, as the City argues, is not for this Court to determine. The City acknowledges there is no binding precedent to support its position. While it does cite common pleas court decisions which indicate that an increase in duties could result in an increase in compensation without violating the Pennsylvania Constitution, these cases are not determinative of the issue that presents itself. In *Sellers v. School District of Upper Moreland Township*, 385 Pa. 278, 282, 122 A.2d 800, 801 (1956), the Pennsylvania Supreme Court stated, "[t]he constitutional provision forbidding an increase in salary or emoluments of a public officer during the term of office is inexorable and may not be avoided by indirection."

---

**7.** The Pennsylvania Supreme Court affirmed and determined Richie was not entitled to the increase.

**8.** In the Superior Court opinion, *Richie v. City of Philadelphia*, 37 Pa.Super. 190 (1908), the Superior Court stated that tax assessors could be removed from office by the board which appointed them for incompetency, neglect of duty or refusal to faithfully perform the duties required by law. The fact that the assessors could be removed during their term did not enter into the Supreme Court's analysis as to whether the assessors were public officers.

This Court is mindful of the Supreme Court's statement in *Sellers,* even though it addressed an increase, rather than a decrease, in salary. This Court must agree with the common pleas court that Article III, Section 27 prohibits the reduction in salary in the middle of the terms of Nigro and Goldsmith.

### IV. Summary.

Essentially, the City raises two issues in its appeal. In the first issue the City argues that Nigro and Goldsmith are not public officers subject to Article III, Section 27 of the Pennsylvania Constitution because they were not appointed to serve for a definite term. The City acknowledges that the Act provides that members of the BRT are appointed for six year terms. However, the City argues that because members of the BRT may be removed at the pleasure of their appointing authority, the judges of the Court of Common Pleas of Philadelphia County, the statutory six year term is not definite. Again, it should be noted that nothing in the record suggests that the appointing authority had any intention of removing Nigro, Goldsmith, or any of the other members of the BRT.

The common pleas court determined that Nigro and Goldsmith were public officers. In part the common pleas court relied on *BRT II* where the Supreme Court determined that the City lacked the authority to change the BRT's appellate function as that power rested with the General Assembly and that the special "quasi-judicial" duties of the BRT's appellate function allowed for some role for the Court of Common Pleas of Philadelphia County to make the appointments to the BRT. The common pleas court determined that the public importance of the appellate function of the BRT, as recognized by the Pennsylvania Supreme Court, supported the interpretation that the BRT members

exercise grave public functions such that they must be classified as public officers for purposes of Article III, Section 27 of the Constitution.

The common pleas court also relied on *Richie* and determined that the BRT's appellate function was an important public duty.

In affirming on this issue, this Court determines that the ability of the appointing authority to remove a member of the BRT does not negate the fact that the General Assembly stated that a member of the BRT is appointed to a full term of six years. Further, this Court agrees with the common pleas court that the members of the BRT are public officers within the meaning of Article III, Section 27 of the Pennsylvania Constitution based on the analysis employed by the Pennsylvania Supreme Court in *Richie.*

The City also contends that because the job responsibilities of Nigro and Goldsmith have been substantially diminished because the BRT no longer performs its assessment function, that Article III, Section 27 of the Pennsylvania Constitution does not prohibit a mid-term reduction in salary.

The trial court determined that the Salary Ordinance which reduced the compensation of the members of the BRT became effective upon the passage and signing of the ordinance on April 22, 2010. The Reorganization Ordinance that reduced the duties of the BRT could not have become effective until October 1, 2010, which was more than six months after the compensation was reduced. The common pleas court properly determined that the attempt to tie the compensation reduction to a reduction in duties must fail as a result of this timing issue.

The City argued in response to the common pleas court's reasoning that the moti-

vation to reduce the salaries of the members of the BRT was irrelevant. The role of the BRT has changed, and it would be illogical for officials whose jobs have fundamentally changed to be immune from salary changes.

This Court, while understanding the City's position, finds no authority to support it. This Court is unwilling and is not permitted to disregard the plain language of Article III, Section 27 of the Pennsylvania Constitution.

Accordingly, this Court affirms.

## ORDER

AND NOW, this 20th day of March, 2013, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.