# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hon. Russell M. Nigro,                    :
Hon. Alan K. Silberstein,                 :
Robert N. C. Nix III, Esquire, and        :
Wayne A. Johns,                           :
               Appellants            :
                        :
            v.                   : No. 249 C.D. 2017
                        : Argued:  October 17, 2017
City of Philadelphia                      :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: November 21, 2017


The Honorable Russell M. Nigro (Nigro), the Honorable Alan K. Silberstein (Silberstein), Robert N. C. Nix III, Esquire (Nix) and Wayne A. Johns (Johns) (collectively, Commissioners), current and former members of the Board of Revision of Taxes (BRT) of the City of Philadelphia (City), appeal from the order of the Court of Common Pleas of Philadelphia County (trial court) entering judgment against them after a bench trial on stipulated facts.

## I.

The BRT was created by statute in June 1939[1] to assess the value of real property in Philadelphia, examine tax returns and hear appeals from assessments.[2] However, in December 2009, the Philadelphia City Council adopted the Reorganization Ordinance to abolish the BRT and replace it with the Office of Property Assessment, which would make initial and revised property assessments, and the Board of Property Assessment Appeals (Board of Appeals), which would hear appeals from assessments. By its terms, the Reorganization Ordinance would come into effect on October 1, 2010, but only if the electorate ratified it at the May 2010 primary election.[3] In the meantime, on April 22, 2010, the Philadelphia City

---

[1] *See* the First Class County Assessment Law, Act of June 27, 1939, P.L. 1199, 72 P.S. §§ 5341.1–5341.21.

[2] *See* Sections 7, 8, 11 and 14 of the First Class County Assessment Law, 72 P.S. §§ 5341.7, 5341.8, 5341.11 and 5341.14.

[3] *See* Sections 2(c)&(d) of the First Class Home Rule Act (Act), Act of August 26, 1953, P.L. 1476, *as amended*, 53 P.S. §§ 13132(c)&(d), which provide:

> (c) Subject to the provisions of the Philadelphia Home Rule Charter and the First Class City Home Rule Act of April twenty-one, one thousand nine hundred forty-nine (Pamphlet Laws 665), the Council of the City of Philadelphia shall have full powers to legislate with respect to the election, appointment, compensation, organization, abolition, merger, consolidation, powers, functions and duties of the Sheriff, City Commissioners, Registration Commission and Board of Revision of Taxes or its successor, with respect to the making of assessments of real and personal property as provided by act of Assembly. The provisions of Section 1-102(2) of the Philadelphia Home Rule Charter are hereby validated and the power of Council to act thereunder is hereby confirmed.

> (d) Legislation adopted by the Council of the City of Philadelphia under the authority of subsection (c) of this section shall not be

**(Footnote continued on next page…)**

Council adopted the Salary Reduction Ordinance,[4] which reduced the annual salaries of the BRT chair from $75,000 to $50,000 and the secretary from $72,000 to $45,000. It also eliminated all other remaining BRT members' annual salaries of $70,000 and substituted in its place a *per diem* compensation of $150, subject to a $40,000 annual maximum. (Joint Stipulation of Facts for Trial, Reproduced Record (R.R.) at 522a-523a.)

---

**(continued…)**

> effective until approved by the electorate of the City of Philadelphia in the same manner as amendments to the Home Rule Charter under the First Class City Home Rule Act.

[4] Bill No. 100212, commonly referred to as the Salary Reduction Ordinance, sets forth the amendments to Section 20-304 of the Philadelphia Code, entitled "Compensation for Members of Board, Commissioners, Committees and Councils." (R.R. at 75a.) "[Brackets] indicate matter deleted." (*Id.*) "*Italics* indicate new matter added." (*Id.*) As pertinent, the Salary Reduction Ordinance provides:

> (7) Board of Revision of Taxes. [Each member of the Board of Revision of Taxes shall receive an annual salary of seventy thousand ($70,000) dollars.] The Secretary *of the Board of Revision of Taxes* shall receive an annual salary of [seventy two thousand ($72,000)] *forty-five thousand* dollars *($45,000)*. The Chairman of the Board of Revision of Taxes shall receive an annual salary of [seventy five thousand ($75,000)] *fifty thousand* dollars *($50,000)*. *Each remaining member of the Board shall receive one hundred and fifty dollars ($150) as compensation for each day the member attends a Board meeting or hearing or both, or such higher amount as required by law, but in no case more than forty-thousand dollars ($40,000) per year*. (*Id.*)

When the Salary Reduction Ordinance was adopted, three of the four plaintiffs involved in this appeal – Nigro, Silberstein and Nix – were serving six-year terms ending in 2013.

On June 15, 2010, the BRT and its members, individually and in their official capacities, filed a petition for review in this Court's original jurisdiction challenging the Reorganization Ordinance and the Salary Reduction Ordinance, which had already reduced the BRT members' salaries. After a hearing, on July 16, 2010, this Court dismissed BRT's petition for lack of jurisdiction and transferred the matter to the trial court. Choosing not to appeal that transfer order, on July 26, 2010, those petitioners filed an appeal with our Supreme Court seeking the exercise of its King's Bench power to grant them various forms of relief.

Ultimately, our Supreme Court took jurisdiction over issues involving the Reorganization Ordinance but refused to exercise jurisdiction over the Salary Reduction Ordinance. Our Supreme Court then held that the Reorganization Ordinance was valid insofar as it reassigned the function of making assessments to the newly-formed Office of Property Assessment, but invalid insofar as it eliminated the BRT's quasi-judicial appellate function and replaced it with the Board of Appeals. Under our Supreme Court's decision, the BRT retained – and continues to retain – jurisdiction to hear appeals from those assessments. *See* Phila. Code § 2–305; *Board of Revision of Taxes v. City of Philadelphia*, 4 A.3d 610, 624–27 (Pa. 2010).

Because our Supreme Court refused to review the Salary Reduction Ordinance, the matter proceeded below in the ordinary course.  Nigro, Silberstein and Nix were all parties to that dispute.

**II.**

Following various filings, on September 7, 2011, the trial court entered summary judgment in favor of Nigro and another plaintiff, holding that "the Salary Ordinance **insofar as** it attempts to reduce the salary and emoluments of the Members of the BRT during his or her term of office, is found to be in violation of Art. III § 27 [of the Pennsylvania Constitution[5]] and unconstitutional and invalid." *See Meade v. City of Philadelphia*, 2012 WL 359524 (Pa. Com. Pl. Philadelphia County, No. 0258, January 17, 2017) (emphasis and footnote added). The City appealed that decision and we affirmed because "[we] must agree with the common pleas court that Article III, Section 27 prohibits the reduction in salary **in the middle of the terms** of Nigro and [another BRT member]." *See Meade v. City of Philadelphia (Meade)*, 65 A.3d 1031, 1040 (Pa. Cmwlth. 2013) (emphasis added).

Subsequent to *Meade*, the City paid, among others, Nigro, Silberstein and Nix[6] for the period from April 22, 2010 (the enactment of the Salary Reduction

---

[5] Article III § 27 of the Pennsylvania Constitution states, "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."  Pa. Const. art. III, § 27.

[6] While the City made payments to Nigro and Silberstein in 2013, the City did not pay Nix backpay until compelled to do so by order dated January 2, 2014.  Following an appeal by **(Footnote continued on next page…)**

5

Ordinance) until the end of their six-year terms in 2013. Once their new terms began in 2013, the City reduced their salaries in accordance with the Salary Reduction Ordinance. As for Johns, because his first appointment to the BRT occurred on May 21, 2011, after the Salary Reduction Ordinance's enactment, his salary began at the reduced level.

The City then continued paying the Commissioners a reduced salary up until the adoption of the Salary Restoration Ordinance on March 27, 2014.[7] That ordinance restores the annual salaries of all BRT members to their pre-Salary Reduction Ordinance amount and provides, in pertinent part:

> Amending Chapter 20-304 of The Philadelphia Code, entitled "Compensation for Members of Boards, Commissions, Committees and Councils," **by repealing Bill No. 100212, thereby returning the compensation for members of the Board of Revision of Taxes to the level existing prior to the passage of that bill**; all under certain, terms and conditions.
>
> WHEREAS, Bill No. 100212, which was enacted into law on April, 22, 2010, was intended to substantially decrease the compensation for all members of the Board of Revision of Taxes; and
>
> WHEREAS, City Council voted to enact Bill No. 100212 based on the assumption that members of the Board of

---

**(continued…)**

the City, this Court affirmed. *See Meade v. City of Philadelphia*, (Pa. Cmwlth., 1309 C.D. 2014 and 1332 C.D. 2014, filed December 30, 2015).

[7] Bill No. 140017.

Revision of Taxes were not public officials under the Pennsylvania Constitution, and that their salaries would be reduced immediately upon passage of legislation; and

WHEREAS, Bill No. 100212 was passed in reliance on the laws that existed on April 22, 2010, that would have abolished the Board of Revision of Taxes and eliminated all duties of the members of the Board as of October 1, 2010; and

WHEREAS, After the enactment of Bill No. 100212, the Pennsylvania Courts found the ordinance, approved by the voters of Philadelphia, that purported to abolish the Board of Revision of Taxes to be unconstitutional in part, so that the Board remains in existence to date, fulfilling its appellate responsibilities; and

WHEREAS, The Pennsylvania Courts subsequently held that Bill No. 100212 was also unconstitutional if applied as intended, and **therefore, the compensation of the sitting members of the Board was not immediately reduced as intended**; and

WHEREAS, It was never the intent of Bill No. 100212: to apply the compensation reductions solely to future terms of members of the Board of Revision of Taxes; now, therefore

THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:

SECTION 1. In reliance on the Commonwealth Court decision, issued on March 20, 2013, (*Meade*[] *v. City of Philadelphia*, 65 A.3d 1031), affirming the ruling of the Philadelphia [County] Court of Common Pleas decision that provisions in Bill No. 100212 violated the Pennsylvania Constitution, Article III, § 27, by attempting to reduce the compensation of members of the Board of Revision of Taxes during their term of office, Council hereby amends Section 20-304(7) of The Philadelphia Code **by repealing and abrogating Bill No. 100212, and reverting to the compensation as set**

> **forth in Section 20-304(7), immediately preceding April 22, 2010.**

(R.R. at 78a-79a) (emphases added).

On May 18, 2015, the Commissioners served the City with a complaint contending that *Meade* held that the Salary Reduction Ordinance was not only invalid as applied, but also void in its entirety *ab initio*. The Commissioners asserted that they should have been paid their original, pre-reduction salary when they began their new terms and their salary should be equal to the pre-reduction amount for the entirety of their terms because the Salary Restoration Act applied retroactively.[8]

Following a bench trial on stipulated facts, the trial court found against the Commissioners, concluding that the Salary Reduction Ordinance remained valid for any terms that commenced after its adoption and that the Salary Restoration Ordinance was not intended to be applied retroactively. This appeal followed.

---

[8] In their Joint Stipulations of Facts for Trial, the parties state that the difference between compensation actually provided to the Commissioners under the Salary Reduction Ordinance and the compensation that would have been provided had it not been in effect would be:

Nigro – $12,500
Silberstein – $74,333
Nix – $29,250
Johns – $173,583

(R.R. at 526a.)

## III.

On appeal, the Commissioners once again contend that the Salary Reduction Ordinance is unconstitutional in its entirety and that the Salary Restoration Ordinance must be applied retroactively. However, before we may reach the merits, the City contends that each of the Commissioners must be estopped from seeking backpay.

## A.

The City first contends that Nigro, Silberstein and Nix's challenge to the Salary Reduction Ordinance is barred by *res judicata* because it was already litigated in *Meade*. However, *res judicata* is inapplicable because the Commissioners are not seeking an additional judgment or modification but, rather, the declaration and/or enforcement of our decision in *Meade*. In other words, there is no new issue or claim that the Commissioners can be barred from pursuing. In any event, we have explained:

> Res judicata encompasses two related . . . principles: technical res judicata and collateral estoppel. Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit **on the same cause of action** is precluded. Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were **actually litigated** and necessary to a previous final judgment.

*J.S. v. Bethlehem Area School District*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002) (emphases added). Here, *Meade* took place prior to John's first term and before the other Commissioners began serving their current terms. Because this appeal

pertains to a reduction of salary at the outset of new terms which was not involved in *Meade*, both the cause of action and issue litigated are not identical and *res judicata* cannot apply.

**B.**

The City also contends that Johns must be barred from asserting retroactive application of the Salary Reduction Ordinance because he is guilty of laches. According to the City, this is because it took four years for Johns to bring this action, despite knowing from the start of his term that he was accepting a reduced salary. We have explained:

> Estoppel by laches is a time-honored doctrine "that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Stilp v. Hafer*, 718 A.2d 290, 292 (Pa. 1998). A party asserting laches must establish two essential elements: (1) a delay arising from the complaining party's failure to exercise due diligence and (2) prejudice to the asserting party resulting from the delay. *Id.* Whether the complaining party acted with due diligence depends upon what that party might have known by use of information within its reach, and prejudice may be found where some change in the condition or relation of the parties occurs during the period the complaining party failed to act. *Id.*

*In re Estate of Leitham*, 726 A.2d 1116, 1119 (Pa. Cmwlth. 1999).

The City contends that Johns is guilty of laches because he received a reduced salary for four years prior to commencing this action, which constitutes a lack of due diligence, and this delay prejudiced the City because it continued to

10

balance and prepare its budget while, unbeknownst to it, it purportedly owed Johns $174,000. In support of its position, the City directs us to our Supreme Court's decision in *Taggart v. Board of Directors of Canon-McMillan Joint School System*, 185 A.2d 332 (Pa. 1962), where a school teacher's delay of five years in bringing a claim for extra compensation was a bar to recovery because school budgeting and financing processes would be prejudiced by such procrastination. Johns, in turn, has offered no response justifying his delay.

Upon review, we agree with the City that the reasoning in *Taggart* is directly on point. As our Supreme Court explained:

> It would be inequitable to impose on taxpayers the extra amounts claimed by the plaintiff when he was indifferent to their rights by his inattentiveness to his own claims. Where public moneys are concerned, budgets are prepared and tax levies instituted based on current obligations. The reaching back to present invoices five years overdue could work havoc to any plan for financing so vital and yet so delicately balanced a program as the administration of the public schools of the Commonwealth.

*Taggart*, 185 A.2d at 336. Because Johns failed to act with due diligence resulting in a four-year delay that now may compromise years of budgeting and planning, he is estopped from pursuing his claim under the doctrine of laches.

As to the merits, the Commissioners assert that *Meade* held the Salary Reduction Ordinance unconstitutional in its entirety and, therefore, contend they are entitled to their pre-reduction salary levels for the entirety of their new terms.

Constitutional challenges are of two kinds: facial challenges or as-applied challenges. *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 275 (Pa. 2003). "[A]n as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Weissenberger v. Chester County Board of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)). Moreover, an as-applied challenge will not necessarily invalidate a law given that a law "may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective." *Pennsylvania R. Co. v. Driscoll*, 9 A.2d 621, 632 (Pa. 1939) (footnote omitted).

As already explained, the salary reduction involved in *Meade* took place during the terms of certain BRT members, and those members challenged the ordinance as applied to them because Article III, Section 27 of the Pennsylvania Constitution prohibits laws from diminishing a public officer's salary or emoluments after election or appointment. Given the limited facts of *Meade*, it is not surprising that the trial court in that case held the Salary Reduction Ordinance unconstitutional "**insofar** as it attempts to reduce the salary and emoluments of the

Members of the BRT **during his or her term of office**." *Meade v. City of Philadelphia*, 2012 WL 359524 (No. 0258, January 17, 2017) (emphasis added). On appeal, we affirmed that determination, because "Article III, Section 27 prohibits the reduction in salary **in the middle of the terms** of Nigro and [another BRT member]." *Meade*, 65 A.3d at 1040 (emphasis added).

Given that the holding in *Meade* was limited to prohibiting a reduction in the middle of a term, *Meade* did not invalidate the Salary Reduction Ordinance in its entirety, *ab initio*.

## V.

The Commissioners also contend that by "repealing and abrogating [the Salary Reduction Ordinance] and reverting" compensation to pre-reduction levels (R.R. at 78a), the Salary Restoration Ordinance retroactively increased BRT members' salaries since April 20, 2010 – when the Salary Reduction Ordinance took effect. In support of this contention, the Commissioners also point to language contained in the Salary Restoration Ordinance's preamble, which indicates that the reduction ordinance was passed under the assumption that it would become effective immediately to all BRT members so that even the salaries for current-term members would be reduced.[9]

---

[9] Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, provides that "The title and preamble of a statute may be considered in the construction thereof." Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926, states that "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." These provisions have been held to apply equally to ordinances. *See Appeal of Sawdey*, 85 A.2d 28 (Pa. 1952); *see also Pleasant Hills Construction Co. v. Borough of Rankin*, 707 A.2d 639, 641 (Pa. Cmwlth. 1998).

Upon review, we find nothing in the Salary Restoration Ordinance indicating an intent for retroactive application. First, contrary to the Commissioners' contention, there is nothing in the Salary Restoration Ordinance's preamble indicating an intent of retroactivity. Instead, the preamble consistently makes clear that because the Salary Reduction Ordinance failed its purpose of reducing current-term salaries *immediately* and was never intended to apply "solely to future terms of members of the Board of Revision of Taxes," it was being repealed. (R.R. at 78a-79a). Second, and more to the point, the Salary Restoration Ordinance does not explicitly state that it retroactively applies. In fact, while a previous draft of the ordinance contained a retroactivity clause stating, "This Ordinance shall be effective retroactively to April 20, 2010[,]" no such language is contained in the final version of the ordinance. (R.R. at 532a.) Given this lack of clear and manifest language, the Salary Restoration Ordinance fails to demonstrate an intent of retroactivity as required by Section 1926 of the Statutory Construction Act of 1972.

Accordingly, because our decision in *Meade* did not invalidate the Salary Reduction Ordinance in its entirety and because the Salary Restoration Ordinance does not retroactively increase the Commissioners' salaries since April 20, 2010, we affirm the trial court's order.

_____
DAN PELLEGRINI, Senior Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hon. Russell M. Nigro,                          :
Hon. Alan K. Silberstein,                       :
Robert N. C. Nix III, Esquire, and              :
Wayne A. Johns,                                 :
              Appellants               :
                                       :
             v.                         : No. 249 C.D. 2017
                                       :
City of Philadelphia                            :

# **O R D E R**

AND NOW, this 21st day of November, 2017, it is hereby ordered that the order of the Court of Common Pleas of Philadelphia County entered on January 24, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge